CASE 62—FEBRUARY 20.

# Turner vs. Commonwealth.

APPEAL FROM MADISON CIRCUIT COURT.

2me619
88 437
88 442
2me619
91 330
2me619
92 450
2me619
o114 249
h114 255
o114 259

1. Although the Court of Appeals cannot and ought not to re-try a question of contempt or no contempt, and has no jurisdiction for that purpose, still it has power to revise and correct erroneous and illegal sentences or judgments pronounced against such offenses by the circuit court

2. The Court of Appeals has jurisdiction of an appeal prosecuted from an order of a circuit court directing the name of an attorney at law to be stricken from the roll of attorneys of such court upon charges of malpractice and official misconduct.

3. In a proceeding in the circuit court to strike the name of an attorney at law from the roll of attorneys upon charges of malpractice and official misconduct, the defendant objected to the trial of the case by the circuit judge, and affidavits filed by the defendant stated, in effect, the following objections to the judge: (1.) That he was personally hostile to the defendant, and had been so for years, and that, as defendant believed, he could not, because of such hostility, do him justice upon the trial of said case; and (2.) That he had prejudged more than one question in the case to defendant's prejudice, and that wrongfully. *Held*—That the objections, *supra*, constituted ample cause rendering it improper for the circuit judge to preside in the case, or to make any order therein after the objections were presented further than was necessary to the selection of a special judge in the manner prescribed by law to preside and dispose of the case.

4. A proceeding against an attorney at law to strike his name from the roll of attorneys, upon charges of malpractice and official misconduct, is properly conducted in the name of the Commonwealth. A person who prefers the charges, by information in writing verified by his affidavit, is neither a necessary nor proper party to the proceeding, and, the proceeding being in the name of the Commonwealth, no judgment for costs can be given against him therein.

Jas. B. Beck and Roger W. Hanson, for appellant, cited *Con. Ky., art. 4, sec. 2*; *Rev. Stat.*, 214, 215; *Civil Code, secs. 15, 16*; *Crim. Code, secs. 1 to 6*; *Rev. Stat.*, 273; 2 *J. J. Mar.*, 575; 1 *Wheeler's Crim. Cases*, 512; 18 *B. Mon.*, 482; *Cowper's Reports*, 829; *Bac. Ab., title Attorney, H.*; 6 *East*, 127; 1 *Yerger*, 228; 1 *Michigan Rep.*, 394; 2 *Cranch Cir. Ct. Rep.*, 379; 9 *Wheaton*, 529; 19 *Howard*, 19; *Con. Ky., art. 4, sec. 28*; *Rev. Stat.*, 229; *Sess. Acts*, 1853–4, *p.* 154; *Sess. Acts*, 1855–6, *p.* 128; *Civil Code, sec.* 367; *Wright vs. Nichols*, 1 *Bibb*, —; *Rev. Stat.*, 205, 206; *Civil Code, secs.* 669, 670.

M. C. Johnson, on same side, cited *Bouvier's Law Dic.*, pages 302, 427; *Rev. Stat., p.* 206, *sec.* 25.

---

---

D. Breck, on same side, cited *Rev. Stat., chapter Costs, secs.* 20–25.

Bush and Turner, on same side, cited *Con. Ky., art.* 4, *sec.* 28; *Rev. Stat., p.* 229 ; *Act of* 1856, *relating to changes of venue, Sess. Acts,* 1855–6, *p.* 129 ; *Cowper's Rep.*, 827 ; 1 *McCord*, 379 ; *Rev. Stat.*, 229 ; *Bouvier's Law Dic., pages* 302, 427 ; *Livingston's Law Magazine, vol.* 3, *p.* 59 ; *Rev. Stat., p.* 205, *sec.* 20 ; *Ib.*, 206, *sec.* 25.

A. J. James, Attorney General, for Commonwealth, cited *Crim. Code, sec.* 342 ; *Rev. Stat.*, 215 ; 1 *Sess. Acts,* 1857–8, *p.* 62 ; *Rice vs. Commonwealth,* 18 *B. Mon.*, 482 ; 1 *Bacon's Ab., title Attorneys, p.* 306 ; 9 *Wheaton,* 529 ; 19 *Howard,* 9 ; 1 *Hale's P. C.*, 646 ; 1 *J. J. Mar.*, 120–140 ; *Commonwealth vs. Barry, Hardin's Rep.;* 4 *Blackstone's Com.*, 284 ; 1 *Bouvier's Law Dic.*, 302, *Contempt,* 6.

Jas. Harlan, on same side, cited 1 *Litt. Laws Ky.*, 560 ; 1 *Stat. Law,* 478 ; 3 *Mar.*, 498 ; *Litt. Sel. Cases,* 249 ; 1 *Bibb,* 598; *Sess. Acts,* 1851, *p.* 352 ; *Civil Code, sec.* 908 ; *Crim. Code, sec.* 342 ; 5 *Watts & Serg.*, 272 ; 19 *Law Reporter,* 431 ; 1 *Howard,* (*Miss.,*) 303 ; 9 *Wheaton,* 529 ; 9 *Ohio,* 42 ; 5 *Litt.*, 289 ; 4 *B. Mon.*, 500 ; *Rev. Stat.*, 214 ; *Sess. Acts,* 1850, *p.* 212 ; *Sess. Acts,* 1853, *p.* 92 ; 2 *Bibb,* 96 ; *Sess. Acts,* 1857, *p.* 62 ; *Hardin,* 228, 239 ; 1 *Yerger,* 228 ; 7 *Mon.*, 187 ; 3 *Amer. Law Reg.*, 193 ; 2 *Cranch's Cir. Ct. Rep.*, 379 ; 1 *Michigan Rep.*, 392.

Runyon, Embry, and Terrill, on same side, cited 4 *Blackstone, chap.* 20, *title Summary Convictions;* 18 *B. Mon.*, 472 ; *Bacon's Abr., Williams' Abr., Bouvier's, Tomlin's, and Jacob's Law Dic., Tidd's Practice, Esp. Nisi Prius, title Attorney ; Livingston's Law Mag., Jan.,* 1856, *p.* 9 *et seq.; Ib., Feb.,* 1854, *p.* 200 *et seq.;* 1 *Michigan Rep.*, 392 ; *Bouvier's Law Dic., titles " Incompetency," " Judge," and authorities there referred to ; Rev. Stat.*, 166 ; *Sess. Acts,* 1853–4, *p.* 146 ; *Sess. Acts,* 1855–6, *vol.* 1, *p.* 129 ; *Sess. Acts,* 1857–8, *p.* 62 ; *Crim. Code, secs.* 277, 348 ; *Civil Code, secs.* 366, 367, 368 ; *Champ vs. Commonwealth, ante,* —; 2 *Starkie Ev., page* 214 *to* 219 ; *Rev. Stat.*, 131 ; *Smith vs. State of Tennessee,* 2 *Yerger ; Rev. Stat.*, 244, *sec.* 10 ; *Ib.*, 254, *sec,* 5 ; *Ib.*, 255, *sec.* 7 ; *Ib.*, 257, *sec.* 7 ; *Ib.*, 259, *sec.* 5 ; *Tidd's Practice, vol.* 1, *page* 59 ; *Rev. Stat., sec.* 1, *art.* 2, *p.* 215 ; *Hardin,* 228 *et seq.*

E. J. Broaddus, on same side, cited *Civil Code, secs.* 15, 16 ;

*Crim. Code, secs.* 327, 342; 4 *Blackstone Com.*, 282; 2 *Bishop on Crim. Law,* 212; 2 *Hawkins' Pleas of the Crown,* 217; *Sess. Acts,* 1857–8, *p.* 35; *Ib., p.* 62; *Rev. Stat.,* 166; *Ib.,* 229; *Auditor vs. Adams,* 13 *B. Mon.; Civil Code, sec.* 367; *Criminal Code, secs.* 348, 349; 1 *Greenleaf's Ev.,* sec. 362; *Smith vs. State of Tennessee,* 1 *Yerger; Rice vs. Commonwealth,* 18 *B. Mon.*

JUDGE STITES DELIVERED THE OPINION OF THE COURT:

This appeal is prosecuted to reverse an order of the Madison circuit court, directing the name of appellant to be stricken from the roll of attorneys of said court.

The order is founded upon charges of malpractice and official misconduct as an attorney, preferred against appellant by P. P. Ballard, and which were presented to said court by information in writing, verified by the affidavit of the informant, and tried and disposed of at the September term, 1859, by the presiding judge of said circuit.

Upon the filing of the information a rule was awarded against appellant for an answer, and an order made directing the attorney for the Commonwealth for that district to conduct the proceeding in behalf of the State.

It appears that upon the making of the order for a rule, an inquiry was made by appellant of the presiding judge, whether, considering the relations then subsisting between appellant and the judge, the latter would sit in the case, to which the judge replied to the effect that he was aware of no legal exception to his presiding, and that, conceiving it to be his duty to hear and decide the case, he should do so—assigning at the same time his reasons for his conclusion, and remarking that if he failed to do the appellant justice, the latter would have the right of appeal to a higher tribunal.

It also appears that prior to the return day of the rule, and before any response was filed, the appellant filed his affidavit, in which he states in substance, that the presiding judge of said court was his bitter personal enemy, and that he (appellant) believed that said judge, because of his enmity to him, could not and would not do him (appellant) justice upon the trial of said charges. And he therefore asked that some other

competent and impartial lawyer or judge should, in the proper manner, be substituted to try said charges, in the place of said presiding judge. No notice seems to have been then taken of this affidavit.

Afterwards, appellant filed his response to the charges, controverting and explaining the material allegations of each, and denying the malpractice and official misconduct imputed to him as an attorney.

With this response he also filed another affidavit of his own, reiterating substantially the statements made in his former affidavit; and again objected to be tried by the presiding judge of said circuit, not only upon the ground already stated, but upon additional grounds set forth in his last affidavit, and more minutely set forth, but to the same effect; and again asked for some other qualified and impartial lawyer or judge to be selected to try said charges against him at an early day.

In order to support this application, he filed an affidavit, subscribed and sworn to by five other persons, in which they state in effect, that it was generally known and believed in Madison county that the said presiding judge was very hostile to appellant; that they believed such to be the truth; and that they further believed that said judge would not do appellant justice upon the trial of the said charges against him.

This application for the selection and substitution of another judge to try said charges was overruled by the presiding judge, who at the same time assigned his reasons for so doing—alluding to what had transpired on a previous day of the term in regard to the same matter, and also referring to the first affidavit mentioned—and stating in substance that he conceived it to be his imperative duty, however unpleasant, to hear and decide the case; and saying in regard to the affidavits, "I am a stranger to the facts, stated in these affidavits, and have no knowledge that they are true."

To the refusal of the court to grant the application for another judge, and to the decision of the presiding judge in regard to his right and duty to preside in the case, the appellant excepted at the time.

The case then proceeded, and upon hearing the evidence and argument of counsel, the order now complained of was made.

Various and numerous exceptions were taken during the progress of the trial, and two separate bills of exceptions, embodying what each party claimed to be the evidence, were prepared—one of which was signed by the judge, and the other by bystanders.

For the appellant, it is contended that the circuit judge committed several errors to his prejudice :

*First.* In assuming to hear and decide the case, notwithstanding the appellant's objections.

*Second.* In refusing to allow another judge or lawyer to be substituted, in accordance with the provisions of the Revised Statutes.

*Third.* In admitting improper evidence against appellant.

*Fourth.* In hearing the case at one term and deciding it at another; and,

*Fifth.* In sustaining the charges, and making the order striking appellant from the roll.

Before noticing any of the errors assigned for reversal, it will be proper to dispose of an objection taken to the jurisdiction of this court.

It is contended that an appeal does not lie in this case, because (1) the charges of which appellant has been adjudged guilty by the circuit judge are but contempts of court, of which the judge of said court can alone take cognizance or punish; and that his action in the premises is not, nor ought to be, subject to the revision of any other tribunal; and (2) that if this court ever had jurisdiction in such cases—which is denied—it has been divested of the same by the Criminal Code. (*Sec.* 342.)

In reply to the first point, it may be said, that conceding for the present that the charges against appellant to be within that class of offenses denominated contempts of court, and punishable by summary proceedings had in the court against which they are committed; and conceding that the power to inflict punishment for such offenses is necessarily incident, and indeed essential, to the very existence of every court—still, it by no means follows that such power is unlimited and beyond control, or that its abuse may not be corrected by another tribunal

having general revisory power over the court in which such abuse may have occurred.

The Revised Statutes forbid any judge or court from imposing, for a contempt, a fine of more than thirty dollars, or imprisonment beyond one day, without the intervention of a jury. (*Stanton's Revised Statutes, vol.* 1, *p.* 408.)

Suppose a judge or court should, for a contempt, undertake, in violation of this law, to inflict a fine of five hundred dollars upon the offender, and make an order to that effect; or, suppose such judge or court, because of contumely or disrespect on the part of its sheriff or clerk, should, by way of punishment, make an order prohibiting such officer from any longer exercising or discharging the duties of his office—would it be seriously doubted that such orders could be corrected on appeal?

But this point has been directly settled by this court in the case of *Bickley vs. Commonwealth,* (2 *J. J. Marshall,* 574,) in which it was held that, although this court could not, and ought not, retry a question of contempt or no contempt, and had no jurisdiction for that purpose, still it had power to revise and correct erroneous and illegal sentences or judgments pronounced againt such offenses.

That the section of the Criminal Code, *supra,* is not entitled to the effect claimed for it, is manifest from its very terms. It reads as follows:

"Section 342. The court of appeals shall have appellate jurisdiction in prosecutions for misdemeanors in the following cases only : where the judgment is for a fine exceeding one hundred dollars, or for imprisonment exceeding fifty days, and where the judgment is for the defendant in a case where a fine exceeding one hundred dollars, or confinement exceeding fifty days could have been inflicted."

The argument is, that the offense here charged against appellant is but a misdemeanor, and that inasmuch as the punishment inflicted was neither fine nor imprisonment, no right of appeal lies to this court.

If this view be correct, then any civil officer who may be charged and convicted of misdemeanor in office, however low

in grade the offense may be, can be deprived of such office by the judgment of an inferior court; and, because the judgment inflicts neither fine nor imprisonment, it cannot be revised or corrected here, however erroneous or unjust it may be.

We are unwilling to admit that the authors of the Code, or the Legislature which adopted it, ever intended such consequences to result from the section referred to, or that they do result from any reasonable interpretation of its terms.

The section was only intended to apply to cases in which the punishment is by fine or imprisonment, or both, and not to a proceeding like this, in which an attorney's right to his office and vocation is involved. The prosecutions therein referred to are such as the Criminal Code itself provides for, and do not belong to the class of proceedings that we are now considering.

The failure of an attorney to pay over money to his client, was a misdemeanor at common law for which his name might be stricken from the roll; and the Revised Statutes, (*Stanton's edition, vol.* 1, *p.* 186,) authorize a suspension from practice for a like offense. We suppose a right of appeal would not be denied to an attorney in cases of this character. Yet, if the construction of the section *supra*, which is contended for, prevails, no appeal could be maintained.

But it is deemed unnecessary to pursue this inquiry further. In the case of *Rice vs. Commonwealth*, (18 *B. Mon.*, 472,) this court entertained jurisdiction of a similar appeal in behalf of an attorney whose name had been striken from the roll, and the jurisdiction was not seriously questioned by the attorney general, although the point was raised in his brief. And we have been unable to find any provision in the civil or criminal Code at all inconsistent with the provisions of the Revised Statutes, (*vol.* 1, *Stanton's ed.*, 303,) which expressly recognize the jurisdiction of this court in all cases involving a right to an *office*, franchise, or freehold, and to one of which classes the present case clearly belongs.

We are therefore of opinion that this court has jurisdiction of the case, and shall proceed to consider such of the errors complained of as are deemed proper to be noticed on this appeal.

The two first mentioned, relate virtually to the same subject, that is, to the propriety of the action of the circuit judge in reference to the election of a special judge to try the case, and to his determination to hear and decide it himself. So that they may be properly considered together.

It must be remembered that the application of appellant was not for a change of venue, but simply that another competent and impartial person might be selected, who could properly preside as special judge on the trial of the charges brought against him. The grounds of the application have been already stated.

It is contended, in support of the decision of the circuit judge on this point, (1) that the grounds disclosed by the affidavits were insufficient to authorize his displacement or the selection of a special judge ; (2) that they fail to show any legal incompetency upon the part of the regular judge, or any good reason why he could not properly preside, and (3) that as the case involved the character of a member of the bar over which it was his duty to preside,· it was not only proper that he should preside, but that he would have been derelict in the performance of his duty had he refused.

At common law, there were but two objections that went to the disqualification of a judge to try a cause, to-wit : interest in his own behalf in the result, or being of kin to others interested therein. (*Bacon's Abridgment, title Courts, vol.* 2.) It is evident that neither of these objections was relied on by appellant or appears in this case.

But it is not claimed that the circuit judge was incompetent according to the rules of the common law. The objection is, that under the constitution and laws of this State he was incompetent, and could not properly preside ; and that appellant was entitled to a special judge to try his case. And this brings up the question whether our laws have enlarged the grounds of incompetency applicable to a judicial officer in cases that may arise in his court.

Prior to the adoption of the present constitution there was no authority for the selection of a special judge to try cases in the absence of the regular judge, or to try cases in which the

latter could not properly preside. In the latter class of cases there was no mode of having a trial at all, except by change of venue, unless, by consent, some member of the bar was selected to preside. And it frequently happened, because the regular judge would not or could not preside in such cases, that the parties were compelled at great expense to procure a change of venue under the laws then in force.

At common law a change of venue was never allowed on account of a personal objection to the judge because of incompetency or prejudice, or for any other reason applicable to him personally.

But our statute of 1815 in relation to this subject (2d *volume Digest*, 1524) enlarged the grounds upon which the venue of an action might be changed.

It provided that in all suits cognizable in any of the circuit courts of the State where either party should conceive that he or she would not receive a fair trial in the court in which such suit might be pending, owing to the interest or *prejudice of any judge* or judges of said court, &c., such party might, upon the terms and in the manner therein prescribed, apply for and obtain a change of venue. Thus making the *prejudice* of the judge a ground for a change of venue; and in such case, the judge of the court, who was supposed to be prejudiced against the party, was not to hear the application for the desired change of venue; but it was to be made to another judge.

This, however, did not remedy the evil of compelling parties litigant to remove their causes to other circuits because of personal objections to the judge; and hence the necessity of providing in such cases for the election of special judges to whom such objections would not apply.

It was in view of this state of things, and to remedy as well the evil mentioned as to provide against inconvenience and costs resulting to litigants because of the failure of circuit judges to hold their courts, that the framers of the constitution of 1850 inserted the 28*th section* of *article* 4 in that instrument, which reads as follows:

" Sec. 28. The general assembly shall provide, by law, for holding circuit courts, when, *from any cause*, the judge shall fail to attend, or, if in attendance, *cannot properly preside*."

And it was for the purpose of carrying this provision into effect that the legislature enacted the several sections of *article* 13, *chapter* 27, of the Revised Statutes, (1 *vol. Stanton's edition Rev. Stat.*, 321,) the first of which is in these words:

"When, from *any cause*, the judge of the circuit court fails to attend, or, if in attendance, cannot *properly* preside in a cause or causes pending in such court, the attorneys of the court who are present shall elect one of its members then in attendance to hold the court for the occasion, who shall accordingly preside."

This section—except as modified by the act of March, 1854, (*Ibid*, 341,) which excludes attorneys engaged in a cause from voting for a special judge to try such cause—stands in full force as it was originally adopted; and, as is judicially known, has been resorted to when the emergencies therein provided for have occurred. It furnishes a remedy different from that provided by the laws in relation to change of venue, but, nevertheless, applicable to all cases—criminal, penal, and civil—in which a special judge, for any cause therein referred to, may be necessary, and to which any party litigant is entitled as a matter of right whenever he demands it and makes such necessity apparent.

Whether appellant has shown such necessity in this case, and has thus manifested his right to be tried by a special judge, is, therefore, the only inquiry that remains to be made.

The section *supra* pursues the constitutional requirement, and declares that "when, from *any cause*, the judge of the circuit court fails to attend, or if in attendance, cannot *properly* preside in a cause or causes pending in such court, the attorneys of the court shall elect," &c. The words "any cause" relate not only to the failure of the judge to attend, but also to the propriety of his presiding in certain causes if in attendance. This is evident not only from the structure of the section itself, but also from the language of the constitutional provision which it was intended to effectuate. And it becomes necessary, therefore, to ascertain the extent and meaning of the words referred to when applied to cases involving the propriety of the circuit judge's presiding in a cause pending in his court.

Turner vs. Commonwealth.

The legislature certainly did not intend that any cause, however trivial or unimportant, should operate to disqualify a circuit judge, or render it improper that he should preside in a case; but obviously meant that such cause should be a legal and substantial one. And so the section should be construed in cases involving the propriety of a judge's presiding, and the necessity of a special judge upon that ground.

But the question arises, what constitutes a legal and substantial cause in such a case. Is it to be tested by the common law, which, as we have seen, only disqualifies a judge upon the score of interest or being of kin to the parties; or, is it to be determined by the statutes of this State relating to change of venue, and in force when the constitution of 1850 was adopted? It seems to us that the latter is the only proper test, for the evident reason that the framers of the constitution, when requiring the general assembly to effectuate the provision *supra*, must be presumed to have referred to the laws then in force prescribing what was a legal cause to prevent a circuit judge from trying a case, or, what amounts to the same thing, to entitle a litigant to remove his suit from the control of such judge by change of venue—which laws, in fact, furnished the only statutory criterion indicating what was a legal cause for depriving a circuit judge of his right to decide a particular case pending in his courts.

One of the causes mentioned in the act of 1815, *supra*, for removing a case by change of venue, as we have seen, was the belief of a litigant that he would not receive a fair trial at the hands of the regular presiding judge, because of his prejudice against him. This belief, if stated in the proper manner, and accompanied by the grounds upon which it was founded, distinctly set forth in a petition and supported by the oath of the petitioner, was a legal cause for change of venue, and rendered it improper that the judge complained of should preside in the case sought to be removed—provided the proper steps were taken to obtain the change.

Here no change of venue was sought, and no particular mode is prescribed for presenting the "cause" which rendered it improper that the circuit judge should preside in the case, and

necessary that a special judge should be chosen for that purpose. But that appellant did show cause why the circuit judge should not preside, and that a special judge was necessary, and thus presented a state of case establishing his right to be tried by such special judge, is, to our minds, very evident.

The affidavits—the substance of which has been stated—disclose, in effect, the following objections to the circuit judge:

1st. That he was personally hostile to appellant, and had been so for years, and that, as appellant believed, he could not, because of such hostility, do him justice upon the trial of said case; and

2d. That he had prejudged more than one question in the case to appellant's prejudice, and that wrongfully.

Now, in our judgment, these objections would have entitled appellant to a change of venue under the act of 1815, *supra*, as well as under the Revised Statutes. They certainly amount to legal cause for removing a case from a court over which the judge, to whom they apply, might preside; and why they do not constitute legal cause rendering it improper for a judge, against whom they are made, to preside in a case in opposition to the party making them, and whose rights are involved in the case, we confess ourselves unable to see.

Our conclusion, therefore, is, that they did constitute ample cause—rendering it improper for the circuit judge to preside in the case, or to make any order therein, after the objections were presented, further than was necessary to the selection of a special judge in the manner prescribed by law, who could preside and dispose of the case.

It is said that the conduct and demeanor of the members of the bar are peculiarly within the control and jurisdiction of the presiding judge. This, to some extent, is true; and it is also true that such judge has, and must of necessity always have, like control over the other officers of his court, and indeed over witnesses and all persons coming before him. He has power to enforce his orders and commands, and to compel the observance of order and decorum, and, for any indignities or contempts against his authority, may punish the offender forthwith by fine

and imprisonment to the extent allowed by law; and from orders inflicting such punishment no appeal will lie.

But the charges against appellant—though in one sense contempts—do not belong to the class just mentioned, and are not thus punishable.  The penalty in such cases is the deprivation of the office and privileges of an attorney by striking the name of the accused from the roll.  The offenses are not indignities committed in the presence of the court or against its authority, and alone to be inquired of and punished by such court; but may be as well inquired of by a special judge selected from the same bar, and who would be presumed to be as watchful of its reputation for integrity and probity as the presiding judge.

We are, therefore, of opinion that the circuit judge erred to appellant's prejudice, both in assuming to try the case and in refusing to order the selection of a special judge.

As this conclusion denies the right of the circuit judge to try the charges against appellant, or to make *any* order respecting the same, after the latter presented his objections and affidavits, it would be evidently improper to say anything in regard to the merits of the case—especially as there is a conflict between the bills of exception attempted to be prepared in behalf of appellant and the Commonwealth.

The embarrassment resulting from this conflict as to the facts will probably not again occur; and justice would seem to forbid any expression of opinion in reference to them, until they are presented in a proper manner, freed from doubt or controversy.

In regard to the costs, it is sufficient to say that the proceeding was properly conducted in the name of the Commonwealth. (*Rice vs. Commonwealth,* 18 *B. Mon., supra.*)  Indeed, no exception seems to have been taken to the order directing it to be so conducted, although appellant was in court after it was made and before he objected to the judge.  The objection to the judge's right to *try* the case did not, of course, go to the previous preparatory order respecting the mode of procedure.

There was no judgment for costs in the court below.  Ballard was neither a necessary nor proper party to the proceed-

ing below, nor is he a party to this appeal. And as the Commonwealth is the only appellee, no judgment can be given for costs upon this reversal.

For the reasons stated the judgment is *reversed,* and cause remanded for further proceedings not inconsistent with this opinion.