CASE 48.—ACTION BY WILLIAM FUHRMAN AGAINST JOHN REBHAN FOR FRAUDULENTLY SHIPPING AND SELLING A LOT OF CATTLE BELONGING TO PLAINTIFF AND CONCEALING THE MONEY RECEIVED, $840.—May 4, 1899.

## Rebhan v. Fuhrman.

Appeal from Jefferson Circuit Court (Law and Equity Division).

Judgment committing appellant to jail for contempt in refusing to pay a certain sum of money into court as ordered, and he appeals.—Affirmed.

1. Contempt—Power of Chancellor to Punish—Insolvency of Litigant—Fraudulently Concealing Money.—The chancellor has power to require a defendant to pay money into court in order to prevent his taking it out of the State when he has acquired possession of it by fraud and is insolvent.

2. Same—Imprisonment in Jail.—The court may commit a litigant to jail to enforce compliance with an order requiring him to pay money into court.

3. Same—Right of Review.—An order punishing contempt will be reviewed on appeal to the extent of seeing that the order is legal.

PHELPS & THUM and D. M. RODMAN for appellant.

KINNEY, GREGORY & KINNEY for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

Appellee brought this suit against appellant, alleging that he had fraudulently shipped to Cincinnati and sold there for $840.00 a lot of cattle belonging to appellee; that he had the money in his possession and concealed it; that he was insolvent, and unless prevented by the court would remove it from the state. He prayed the court to require the money

Rebhan v. Fuhrman.

paid to the receiver. Appellee being examined in open court and disclosing that he had something over $600.00 of the money, was ordered to pay the amount into court, and declining in open court to obey the order, was committed for contempt until he should purge himself of the contempt by paying the money into court in obedience to the court's order. On a subsequent day he moved for a new trial, and also that an appeal be granted him to this court; but the court declined to hear either of these motions, though he allowed them to be made part of the record. Appellant then took out a proceeding in the nature of a habeas corpus before a judge of another division of the Jefferson circuit court, and at the same time entered a motion to set aside the order committing him to jail, and a motion for an appeal from that order to this court. On these motions, the evidence was heard before another judge, who came to the same conclusion as the former one from the evidence; but granted an appeal from his ruling to this court. The evidence heard in the lower court has not been brought up by appellant, and of course it must be presumed that it supported the conclusion arrived at independently by both the judges who heard it. The question presented, therefore, is, whether the court below in the exercise of its chancery jurisdiction had the power to require appellant to pay into court the money of the appellee which he had in his possession, in order to prevent his taking it out of this state when he had acquired possession of it by fraud and was insolvent.

Courts of equity in this state have all the powers of the English equity courts. The power of laying hold of the conscience of the defendant and compelling him to do what is right, has always been

exercised by the English chancellors. It lies at the basis of the greater part of their jurisdiction. It would be a mockery of justice, indeed, if a man could get hold of the money of another by fraud and the person defrauded have no remedy, except that by the ordinary legal process. In this case it was necessary to act at once before the money was spent; the court had full power without the aid of any statute to make all necessary orders to prevent the consummation of the fraud, and by section 298 of the Code of Practice he was expressly authorized to have the fund paid to the receiver and to coerce the delivery of it to him.

It is earnestly argued that the court erred in committing appellant to jail until he should obey the order and pay over the money in his possession. It is contended that the court could only fine appellant $30.00 or imprison him not exceeding thirty hours, under section 1291 of the Kentucky Statutes. But this section only applies to criminal proceedings for contempt; it is a part of the chapter on "Crimes and Punishment." By subsection 2, section 1663, the power of the chancellor to carry into execution his judgment "according to the ancient practice of the courts of chancery" is expressly reserved. Without the power of self-protection, courts cannot exist, and their judgments would not be respected if they were without power to enforce them. A small fine or imprisonment for a few hours would amount to nothing in a case like this. The power of the court to compel respect for its judgments by committing a contumacious litigant until he obeys may be exercised without infringing any provision of the Constitution. The only provision it makes on this subject is as follows:

"The person of a debtor where there is not strong presumption of fraud shall not be continued in prison after delivering up his estate for the benefit of his creditors in such manner as shall be prescribed by law." (Section 18.)

Pursuant to this provision of the Constitution by section 2180 of the Kentucky Statutes, a proceeding is provided by which debtors imprisoned may be discharged from custody upon surrendering up their property. And by section 2184 it is provided that, "the provisions of this chapter shall apply to a person imprisoned by order of a court of chancery to compel the payment of money under a judgment of such court."

These provisions recognize the right of the chancellor to make such orders as were made in this case. Independently of the order of attachment the chancellor had jurisdiction to order the money paid into court to prevent its being lost. The order committing the appellant to jail until he paid the money was not void, it appearing that he had the money in his custody or under his control, and that his disobedience of the order was deliberate and willful. Upon giving notice and surrendering his property, he might at any time after ten days have obtained his discharge under section 2180, Kentucky Statutes, and being apparently unwilling to take the oath therein provided, we do not see that he had any ground of complaint of the action of the court below. In Patton v. Harris, 15 B. Monroe, 607, this court declined to reverse a similar order, and in City of Newport v. Newport Light Company, 92 Ky. 445, the power of the court to protect itself against such contempts by proper orders is upheld. The exercise of the power of punishing for contempt will be

reviewed by this court to the extent of seeing that the order is legal.  (Brown v. Brown, 96 Ky. 505.)
    Judgment affirmed.