CASE 26.—APPEAL BY J. A. EDGE FROM A CONVICTION
FOR CONTEMPT OF COURT.—June 17, 1910.

## Edge v. Commonwealth.

Appeal from Scott Circuit Court.

R. L. STOUT, Circuit Judge.

Defendant appeals.—Reversed.

1. Contempt—Appeal—Decisions Reversible.—An illegal or er-
roneous judgment in a contempt case may be corrected on
appeal.

2. Contempt—What Constitutes.—Where an attorney for one
who was released on habeas corpus from arrest for a hear-
ing as to her mental condition informed her that she might
go where she pleased, and loaned her a sum of money, and
she left the state, he was not guilty of contempt of court for
obstructing process; the advice having been given and the
loan made before the rule against him was issued.

VICTOR BRADLEY, A. M. BAKER, WM. H. HOLT and GEO.
C. WEBB for appellant.

JAS. BREATHITT attorney general and TOM B. McGREGOR
assistant attorney general for the Commonwealth

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This appeal is from a judgment of $500 and six
months' confinement in the county jail, rendered
against appellant by the Scott circuit court for an al-
leged contempt of that court. This court has in sev-
eral cases determined that an illegal or erroneous
judgment in a contempt case might be corrected and
reversed upon an appeal. See the cases of Bickley v.
Commonwealth, 2 J. J. Marsh. 575; Turner v. Same,

59 Ky. 619; French v. Same, 97 S. W. 427, 30 Ky. Law
Rep. 98.

Appellant was a member of a law firm in Lexing-
ington, styled "Baker & Edge." One Mrs. Richard-
son was confined in the Lexington Asylum under an
order of the Scott county court.  She employed an at-
torney by the name of Minogue to aid her in being re-
leased from the asylum, and to recover her property
in Scott county from the possession of her children,
who also claimed it, and who, or a part of whom, caus-
ed her to be sent to the asylum.  Minogue engaged
the law firm of which appellant was a partner to aid
him in these matters.  It was ascertained by Minogue
that the proceedings in the Scott county court  in
which Mrs. Richardson was declared a lunatic were
void, and a writ of habeas corpus was sued out and
tried before the judge of the Fayette circuit court,
and the proceedings of the Scott county court were
declared void, and Mrs. Richardson was released from
the asylum.  She went to a boarding house in Lex-
ington and remained until early in October, 1909.  On
October 4, 1909, the Scott circuit court convened, and
one of her sons, W. A. Richardson, sued out from the
Scott county court a writ for Mrs. Richardson's ar-
rest and arraignment before the Scott circuit court
for a hearing as to her mental condition.  She was
taken in charge by the officer under this writ,  but
while they were preparing to carry her to Scott coun-
ty a second habeas corpus was sued out, and upon a
hearing the circuit judge held the Scott county court's
order of arrest void, and Mrs. Richardson was dis-
charged.  This took place on the afternoon of Octo-
ber 6, 1909.  Mrs. Richardson returned to her board-
ing house, and the proprietor told her that she could
not keep her any longer, that she needed her room,

and disliked the notoriety of the arrest in
her house.  She then consulted with some of
her relatives in Lexington, and especially with a
cousin, Dr. Estes, as to what she had better do.  He
advised her to go to Cincinnati to visit his brother,
another cousin of hers, and to take a rest while there.
She then advised with her attorneys as to whether
she had a right to go where she wished, and they
told her that she did.  She left that afternoon, went
to Paris where she boarded a train the next morning
and arrived in Cincinnati by 9 o'clock.  Estes ar-
ranged with one Frederick to accompany her on
her way.  Before leaving Lexington, she applied to
appellant, Edge, for a loan of money with which to
make the trip, and he let her have $15.  On October
7th the Scott circuit court issued a rule against Ba-
ker, Minogue, and appellant, Edge, for them to show
cause why they should not be punished for contempt
of court for aid in removing or concealing Mrs. Rich-
ardson so as to prevent the officer from bringing her
before the court, and thereby obstructing its process.
They responded, and denied the statements in the
rule, and also the affidavits upon which it issued.
They also disclaimed any intention of contempt to-
wards the court.  The rule was discharged on Octo-
ber 18th, and the respondents were dismissed.  On
the same day another rule was issued against the
same parties to appear forthwith and show cause why
they should not be punished for contempt of court
for having since October 7th willfully and corruptly
kept Mrs. Richardson in Cincinnati to prevent the
execution of the writ of October 4th, and to prevent
an inquiry by the court as to her mental condition.  On
the trial of this last rule the court, at the conclusion
of the evidence, gave a peremptory instruction in be-

Edge v Commonwealth.

half of Minogue and Baker, but overruled the motion made in behalf of appellant, Edge.

The testimony, with reference to appellant's connection with the matter, is, in substance, that he, with the other two attorneys, represented Mrs. Richardson in the trial of the first and second writs of habeas corpus—the first to release her from the asylum and the second from the writ of arrest issued by the county court of Scott county. In both of these proceedings the circuit court judge of Fayette county sustained them and released Mrs. Richardson. After her release the second time, she applied to appellant for information as to whether she had a right to go where she pleased and he advised her that she did have. He did not advise her to go any place. He had nothing to do with that matter, and it was at this time that she asked him for the loan of $15, which he let her have. This was after Mrs. Richardson had been released, and before the rule against appellant and his co-counsel was issued on October 7th near 10 o'clock, about the time Mrs. Richardson arrived in the city of Cincinnati. Appellant never saw or advised with her after that until he went to Cincinnati to take her deposition in behalf of himself and co-counsel to be used on the trial of the first rule of date October 7th, and at this time he made her another small loan. This is practically all the testimony connecting appellant in any way with the matter.

Appellant was a licensed lawyer, and it certainly could not be considered a contempt of court to represent this unfortunate woman in the habeas corpus proceedings, and, after she was released by a court of competent jurisdiction, to advise her she had the right to go where she wished and to make the small loans to her. The advice was given and the $15 loan

was made before any rule was issued by the Scott circuit court; and Mrs. Richardson did have the right to go to see her relatives, if she so. desired. In our opinion, the lower court should have sustained appellant's motion for a peremptory instruction, and dismissed the proceedings against him.

· For these reasons, the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.