## Adams v. Gardner, Judge.

(Decided June 8, 1917.)

### Appeal from Magoffin Circuit Court.

1. Appeal and Error—Affidavits—Filing After Appeal.—Affidavits filed in the circuit court after an appeal has been granted to this court, will, upon motion, be stricken from the record.

2. Contempt—Civil Contempt—Criminal Contempt.—Civil contempts are those quasi contempts which consist in failing to do something which the contravenor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court. Criminal contempts are acts in disrespect of the court, or its processes, which obstruct the administration of justice, or tend to bring the courts into disrespect.

3. Contempt—Appeal and Error.—Under section 950 of the Kentucky Statutes, an appeal lies in cases of civil contempt; and, while the court is prohibited by the statute from retrying the question of contempt or no contempt of a criminal nature, it may, nevertheless, revise and correct illegal sentences, or excessive or cruel punishments.

4. Contempt—Trial.—No step that is permitted by law, in the trial of a case, can be treated as contempt of court.

5. Judges—Objections to Judge and Proceedings Thereon—Affidavits. —In order to require a trial judge to vacate the bench, as may be done under section 968 of the Kentucky Statutes, the affidavit must specify the grounds for the litigant's belief that he cannot obtain a fair and impartial trial; and, the application, to be available, must be made before the appearance to the merits of the

action, or the submission of preliminary motions preparatory to a trial, unless the affidavit is based upon facts discovered after the issue was made.

6. Attorney and Client—Contempt of Court—Suspension Not Punishment for Contempt.—Suspension of an attorney from the practice of his profession is not, under section 1291 of the Kentucky Statutes, a permissible punishment for criminal contempt; he can only be fined or imprisoned, as provided by the statute.

7. Attorney and Client—Contempt of Court—Order of Suspension.—An order suspending an attorney from the practice of his profession until he should purge himself of contempt of court, furnished no direction or measure of what was required of appellant, and was too indefinite to be of any validity.

N. P. ADAMS and M. F. PATRICK for appellant.

W. C. MARSHALL for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

In May, 1916, B. J. Elam was appointed receiver of the Salyersville Gas Company in the action of the Continental Supply Company v. The Salyersville Gas Company, then pending in the Magoffin circuit court.

At the October, 1916, term of that court, Judge D. W. Gardner, the presiding judge, entered an order upon the motion of the Continental Supply Company, directing Elam as receiver to make a full and complete report and settlement before the master commissioner. The master filed his report on November 17, 1916, and both the Continental Supply Company and Elam filed exceptions thereto.

On November 27, 1916, the court entered this order: "It is ordered by the court that B. J. Elam, after inspection of settlements be, and he is discharged as receiver of the Salyersville Gas Company."

On the same day John Salyer was appointed receiver for the Salyersville Gas Company, and he qualified as such, as required by law.

There is nothing to show that Elam had any notice of the action of the court discharging him as receiver, and we understand it is not contended that he did have notice thereof. This is borne out by the fact that on the same day the court entered another order which recited that Elam had tendered his resignation as receiver, at a former day of that term of the court, and that the court accepted the same and appointed Salyer as receiver in Elam's stead; and, the order further directed Elam to

turn over to Salyer, his successor, all the property of every kind, in his hands belonging to the Salyersville Gas Company.

Presumably, this last order was entered upon the theory that the previous order of the same day discharging Elam, without notice and an opportunity to be heard, as well as the appointment of Salyer, was premature and erroneous. There is nothing in the record to show that Elam had any notice of the order last above referred to; but, as it recites that the court acted upon Elam's resignation, it was entered evidently upon the theory that no notice to Elam was necessary.

On December 1st, Salyer filed his affidavit showing that he, as receiver, had demanded of Elam the property of the Salyersville Gas Company, and that Elam had refused to surrender it. At the same time Elam appeared in court, and, having announced that he had not tendered his resignation, the attorney for the plaintiff asked his removal; whereupon, the court gave Elam time until two o'clock of that day to show that he had not presented his resignation, and why he should not be removed as receiver.

Elam filed a demurrer to the rule against him, and the demurrer was overruled on the same day.

Thereupon, Elam made a motion to set aside and vacate the order appointing Salyer as receiver and directing Elam to deliver to Salyer the property belonging to the Salyersville Gas Company, upon the ground that he had never resigned his office as receiver; and, there being no vacancy in the office of receiver, the court was without jurisdiction to appoint Salyer. At the same time Elam as receiver filed a demurrer to the order appointing Salyer as receiver and directing Elam to turn over to Salyer the property of the Salyersville Gas Company; and, the court overruled the demurrer.

Elam, by his attorney, A. H. Adams, the appellant, then filed his affidavit seeking to depose Judge Gardner as circuit judge under section 968 of the Kentucky Statutes. The affidavit stated three grounds why Judge Gardner should not sit in the case, and why Elam believed he could not secure a fair and impartial hearing on his motion to set aside and vacate the orders above referred to, and on the trial of his exceptions to the commissioner's report, as follows: (1) That Judge Gardner was personally interested in the result of the trial of

said motions and exceptions because, while a candidate for the office of circuit judge, he, for the purpose of securing votes and support in said election, had agreed and promised to appoint Salyer receiver in this case; (2) that Judge Gardner was a brother of J. H. Gardner who had a suit pending in the United States District Court, at Jackson, Kentucky, against the Salyersville Gas Company, seeking to obtain a judgment against it for the sum of $10,000.00, and that in the event J. H. Gardner should obtain judgment the company would be unable to pay the judgment, and J. H. Gardner would thereby become the sole owner of the gas company and its effects; and, (3) that Elam was the son-in-law of A. T. Patrick who had defeated Judge Gardner for circuit judge in 1915 in the old 31st judicial district (before the 36th judicial district was created in 1916); that Judge Gardner had defeated W. R. Prater for circuit judge in the new 36th judicial district in November, 1916; that in those elections Elam had supported Patrick and Prater, respectively; and that Judge Patrick, who was then the acting judge of the Magoffin circuit court, had originally appointed Elam receiver for the Salyersville Gas Company.

The affidavit further stated that these election contests were active and heated; but the only charge made in this connection is that during these elections Judge Gardner made such promises and alliances with the people interested in the result of this motion and trial, that he could not and would not decide this case or motion "in favor of Elam."

Judge Gardner held the affidavit insufficient, and entered an order which, in part, reads as follows:

"The court upon inspection of the above affidavit adjudges that B. J. Elam, who filed the above affidavit, and A. H. Adams, attorney, who presented same, are each in contempt of court, and being present each is hereby declared so; and, the court refuses to hear any further motion from B. J. Elam and hereby removes him as receiver of the Salyersville Gas Company."

On the same day the court entered this further separate order relating to Adams:

"The defendant, A. H. Adams, who was adjudged in contempt of court by the above order, will not be permitted to file any pleadings or make any motions in this court until he purges himself of said contempt; to which

defendant excepts and prays an appeal to the Court of Appeals, which is granted.''

All of the foregoing orders, beginning with the order filing Salyer's affidavit showing that Elam had not complied by surrendering the property, were entered on December 2, 1916, Adams appearing and acting as attorney for Elam. Two days later—on December 4, 1916 —Judge Gardner filed a statement reciting briefly the foregoing steps in the case relating to the removal of Elam as receiver, and closed it with the following declaration:

''Now comes B. J. Elam and A. H. Adams and files the affidavit of B. J. Elam seeking to depose the court from this case; upon consideration of this affidavit the court considered it insulting, and reflecting upon the court, and being filed at a time when the court (had given) his opinion and had taken jurisdiction of the case; and both Elam and Adams appearing to the court to be in an intoxicated condition, the court then adjudged a contempt against both Elam and Adams.''

At the same time the affidavit of Salyer was filed, in which he contradicted the statement made by Elam, to the effect that Judge Gardner had promised to appoint Salyer receiver of the Salyersville Gas Company for the purpose of securing votes and support in his election. It is not improper, under the circumstances, to say that Adams denies he was intoxicated.

Adams prosecutes this appeal from the order suspending him from practice, and asks a reversal upon two principal grounds: (1) that the Elam affidavit was not improper, and appellant's act in filing it did not justify the court either in adjudging him to be in contempt or in suspending him from the practice of law; and, (2) that the contempt judgment was, under any view of the case, erroneous because it failed to define the terms upon which the appellant could purge himself of contempt.

1. Before considering the case upon its merits, we will dispose of appellant's motion, made in this court, to strike from the record the statement of Judge Gardner and the affidavit of John Salyer, filed on December 4, 1916, two days after the appeal was granted herein. This motion will have to be sustained, since these two papers were filed after this appeal was granted.

2. It is suggested that no 'appeal lies in this case, and that the appeal should be dismissed for that reason.

Section 950 of the Kentucky Statutes regulating appeals to this court provides that no appeal shall be taken to reverse a judgment punishing contempt. But, in this respect, the cases make a distinction between criminal and civil contempts.

Civil contempts are those *quasi* contempts which consist in failing to do something which the contravenor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court; while criminal contempts are all acts in disrespect of the court or its process, which obstruct the administration of justice, or tend to bring the court into disrespect. Wages v. Commonwealth, 13 Ky. L. R. 925; French v. Commonwealth, 30 Ky. L. R. 98, 97 S. W. 427; 6 R. C. L., p. 490.

Notwithstanding the statute, *supra,* an appeal lies in cases of civil contempt. City of Newport v. Newport Light Co., 92 Ky. 445; Rebhan v. Fuhrman, 139 Ky. 421. And, while this court is prohibited by the statute from retrying the question of contempt or no contempt of a criminal nature, it may, nevertheless, revise and correct illegal sentences, or excessive or cruel punishments. Beckley v. Commonwealth, 2 J. J. M. 574; Turner v. Commonwealth, 2 Met. 619; French v. Commonwealth, *supra*; Brown v. Brown, 96 Ky. 505; Edge v. Commonwealth, 139 Ky. 252. This being a case of criminal contempt, we have the power to revise the judgment complained of to the extent indicated.

3. Coming to the merits of the case the question for decision is this: Was the filing of the Elam affidavit a contempt of court?

It may be said generally that, in the trial of a case, no step that is permitted by law can be treated as contempt of court; otherwise, the remedy given is denied. Section 968 of the Kentucky Statutes expressly provides that if either party shall file his affidavit that the presiding judge will not afford him a fair and impartial trial, the judge shall vacate the bench. But to have the regular judge vacate the bench, the litigant must state the facts upon which he rests his belief that the judge will not give him a fair trial; and, the facts thus shown must be pertinent to the case, and such as should prevent the judge from presiding. German Ins. Co. v.

Landram, 88 Ky. 433. And, the objection, to be available, must be made before an appearance to the merits of the action, or the submission of preliminary motions preparatory to a trial, unless the affidavit is based upon facts discovered after the issue was made. Vance v. Field, 89 Ky. 178; Hargis v. Commonwealth, 135 Ky. 578.

Under this rule the Elam affidavit was insufficient because it was not timely made. While the facts relied upon as a basis of the affidavit were pertinent and not improperly introduced, they occurred long before the proceeding to remove Elam was taken, and were well known to him at the time he filed his exceptions to the commissioner's report. The filing of the affidavit was, however, permissible under the statute; and, the fact that it was not timely filed did not make it a contempt of court.

4. Furthermore, suspension of an attorney from the practice of his profession, is not, under section 1291 of the Kentucky Statutes, a permissible punishment for criminal contempt. That section in the chapter on "Crimes and Punishments," provides a maximum fine of thirty dollars and imprisonment for thirty hours, as a punishment for contempt, unless a jury tries the case. The court's power in the premises was fixed by the statute; it was without power to impose a different punishment. French v. Commonwealth, supra.

5. Again, the order suspending the appellant from practice until he should purge himself from the contempt furnishes no direction or measure of what is required of the appellant, and, for that reason, is too indefinite to be of any validity. What must appellant do to reinstate himself? What might be sufficient purgation in the opinion of the appellant might be wholly insufficient to the mind of the circuit judge. And, if purgation means apology, to whom must he apologize? In other words, no specific or definite act is required of the appellant in order for him to relieve himself of the alleged contempt.

Under either view of the case, the judgment finding the appellant guilty of contempt and suspending him from the practice of his profession was erroneous and illegal and will have to be reversed.

It is so ordered.