## Marshall v. Hancock, Judge

June 19, 1945.

296

Wallis Downing for petitioner.
Joseph J. Hancock for respondent.

OPINION OF THE COURT BY JUDGE REES—Denying writ.

In March, 1945, a suit styled John Riehl v. James Wheeler was filed in the Jefferson circuit court and was assigned to the First Division, Common Pleas Branch, of which Hon. Joseph J. Hancock is the presiding judge. A motion to require the presiding judge to vacate the bench was filed by the plaintiff, and in support of the motion the affidavit of the plaintiff's attorney was filed. Conceiving that the affidavit contained contemptuous matter, the presiding judge directed the clerk to issue a rule against the attorney to show cause why he should not be punished for contempt of court. Before the day on which the rule was made returnable, the attorney filed in this court a petition in which he asked for a writ prohibiting Hon. Joseph J. Hancock from proceeding further in the matter of the rule. It is petitioner's contention that the affidavit contained no contemptuous matter, and that unless prohibited by this court the respondent will adjudge petitioner guilty of contempt; that he has no adequate remedy by appeal or otherwise, and will suffer great and irreparable injury. It is suggested by respondent that this court is without jurisdiction to issue a writ of prohibition against a circuit judge in a case of criminal contempt where the punishment imposed by the court without the intervention of a jury is limited to a fine of not exceeding $30 or imprisonment for not exceeding thirty hours. KRS 432.260.

In Tompkins v. Manning, 205 Ky. 327, 265 S. W. 830, it was held that the Court of Appeals was without jurisdiction to issue a writ to restrain enforcement of a judgment assessing a fine of $30 for contempt. In subsequent cases, however, jurisdiction has been entertained. In Ketcham v. Manning, 212 Ky. 325, 279 S. W. 344, a writ of prohibition was granted, but there a great number of proceedings for contempt were involved. In Williams v. Howard, 270 Ky. 728, 110 S. W. 2d 661, 663, a writ was granted prohibiting the respondent from trying or punishing the petitioner for contempt. The court said:

"An appeal will not lie from a judgment punishing one for criminal contempt except for the purpose of determining whether the punishment imposed is illegal, or excessive, and not for the purpose of retrying the question of contempt. French v. Commonwealth, 97 S. W. 427, 30 Ky. Law Rep. 98; Adams v. Gardner, 176 Ky. 252, 195 S. W. 412. It is clear, therefore, that if the respondent should hold the petitioner guilty of contempt, and fine him $30 or imprison him for not exceeding 30 hours, as he is authorized to do without the intervention of a jury, section 1291, Kentucky Statutes, the petitioner would suffer great and irreparable injury without adequate remedy by appeal."

In Herr v. Humphrey, 277 Ky. 421, 126 S. W. 2d 809, 121 A. L. R. 954, a similar writ was issued, and it was held that this court has jurisdiction where the circuit judge is about to impose a fine for criminal contempt without jurisdiction or erroneously within his jurisdiction. It was further held, in substance, that the petitioner was without adequate remedy by appeal and would suffer great and irreparable injury. In Lisanby v. Wilson, 280 Ky. 768, 134 S. W. 2d 651, the writ was denied, but the jurisdiction of this court was recognized. We are not disposed now to depart from the rule announced in these cases.

The substance of the affidavit filed by petitioner in the court below in support of the motion to require respondent to vacate the bench is that respondent has a personal hostility to petioner, and by reason thereof will not afford any litigant represented by him a fair and impartial trial. In order to illustrate the hostile feeling of respondent to the petitioner, certain occur-

rences are set forth in the affidavit. This part of the affidavit is divided into three paragraphs. In paragraph I a personal encounter between petitioner and respondent in the courthouse in Louisville, Kentucky, on November 23, 1927, when respondent was a practicing attorney, is described. Paragraph 2 of the affidavit reads:

"That affiant has for many years represented the Kentucky Wall Plaster Company, who, in and about the year 1933 or some time prior thereto was interested in a claim against A. E. Hess; that at the time of said interest in said claim Joseph J. Hancock represented said Hess in a divorce proceeding and other legal matters; that the Louisville Trust Company had a note secured by a mortgage on the property of said Hess, and that said Hancock for said Hess secured the Louisville Trust Company to bring a foreclosure proceeding against said Hess agreeing for said Hess to represent the Louisville Trust Company in bringing the suit, and that the cost of litigation, including attorney's fee would be paid by Hess. The purpose of said Hancock was to thereby represent both plaintiff and defendant and cut out the wife's interest and creditors' interest; that at said time affiant made known to the Court said method and procedure of the said Hancock; that said Hancock displayed the same vicious attitude as on previous occasions and since."

In paragraph 3 it is stated that petitioner, between the years 1933 and 1938, represented relatives of respondent in a suit to require respondent to account for certain money in his hands as executor of the estate of Augusta Schlenk. The affidavit concludes:

"Affiant therefore states that the Judge of this Court by his actions as aforesaid has for years been embittered against this attorney; that in fairness to the said Joseph J. Hancock himself he ought not to preside in this case, and cannot do so in such an impartial manner as to afford the said John Riehl, plaintiff, who is represented by Burwell K. Marshall, a fair and impartial trial in this case."

It has been said that it is peculiarly the duty of an attorney to maintain the respect due to courts, and any breach of this duty is a contempt. In Huggins v. Field, 196 Ky. 501, 244 S. W. 903, 905, 29 A. L. R. 1268, the court said:

"Attorneys are officers of the court, and as such are called upon to uphold the dignity of the court and to respect its authority, and they have no right, under the guise of protecting the interest of their client, to depart from the well-established rules of practice in order to unnecessarily insult, scandalize and otherwise impugn the honor and integrity of the court. They should confine their utterances to such as the law allows, and in exercising their rights on behalf of their clients they should do so in a respectful manner, and employ only respectful and decorous language."

There can be no doubt that paragraph 2 of the affidavit filed in the lower court by petitioner contains matter and innuendoes beyond the relevant facts necessary to show that the presiding judge would not afford his client a fair and impartial trial. It is susceptible of the construction that it was the affiant's intention to reflect on the integrity of the presiding judge. In petitioner's brief it is insisted that he had no improper motive, and that an intention to reflect on the integrity of respondent should not be imputed to him. The necessity for the exercise of the power to punish for contempt has been recognized, and the power has been enforced from an early period, but where the contempt consists of statements derogatory to the court, the power should be exercised with caution and discretion. Where the contempt consists of statements susceptible to the construction that they were intended to reflect on the integrity of the judge, opportunity should be afforded to the offender to purge himself of the contempt by explanation, apology or retraction. The court, however, acts in its discretion in the matter. In the case of In re Woolley, 11 Bush 95, this court said:

"We recognize, to the utmost reasonable limit of its application, the rule that a supposed contempt consisting in mere words, which are apparently intended to be scandalous and offensive, but which are at all susceptible of a different construction, may be explained or construed by the speaker or writer, and that upon his sworn disavowal of an intention to commit a contempt proceedings against him must at once be discontinued. "But this rule does not control where the matter spoken or written is of itself necessarily offensive and insulting. In such a case the disavowal of an intention

to commit a contempt may tend to excuse, but it can not and will not justify the act.''

The following observation of Chief Justice Taft in Cooke v. United States, 267 U. S. 517, 539, 45 S. Ct. 390, 395, 69 L. Ed. 767, 775, is pertinent here:

''The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice, and in maintaining the authority and dignity of the court, is most important and indispensable. But its exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge. The judge must banish the slightest personal impulse to reprisal, but he should not bend backward, and injure the authority of the court by too great leniency. The substitution of another judge would avoid either tendency, but it is not always possible. Of course, where acts of contempt are palpably aggravated by a personal attack upon the judge, in order to drive the judge out of the case for ulterior reasons, the scheme should not be permitted to succeed. But attempts of this kind are rare. All of such cases, however, present difficult questions for the judge.''

We think the petition for a writ of prohibition fails to show that respondent acted erroneously in issuing the rule, and the writ is denied.