# MARY VANDERBERG, Appellant, v. KANSAS CITY MISSOURI GAS COMPANY, Respondent.

### Kansas City Court of Appeals, November 4, 1907.

1. **PUBLIC UTILITIES: Monopoly: Impartial Service.**  A public service corporation like a gas company is a monopoly tolerated only in cases of necessity and is under a reciprocal legal obligation to serve all members of the public impartially.

2. ———: ———: ———: **Rates and Regulations.**  The rates and regulations of such corporation must be reasonable and uniform and apply alike to all customers of the same class and are subject to review by the courts on the grounds of unreasonableness or oppression.

3. ———: ———: ———: **Married Women: Statute.**  Under the statute relating to married women they are *sui juris* with regard to their separate property and may contract and sue in

their own name and right;. and a public service corporation cannot discriminate against them on the ground of marriage.

4.  Evidence: Contract. The contract offered in evidence is a contract with plaintiff's husband which she cannot contradict by parol testimony and cannot enforce its provisions in her own name.

5. ———: ———: ———: ———: Landlord and Tenant. Nor was the plaintiff in a position to demand a contract in her own name, since she was not the tenant of the premises which she sought to have lighted, but her husband was the tenant; and the regulations of the defendant requiring the contract to be with the tenant was reasonable.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

AFFIRMED.

*Burnham & Brewster* for appellant.

A public service corporation, like a gas company, possessing a grant and franchise from the public, the grant thus resting upon a public and reciprocal relation imposes upon the company the legal obligation to serve all members of the public impartially, and to permit all such to use gas who offer to pay, and abide the reasonable rules, etc. State ex rel. v. Consumers' Gas Co., 55 L. R. A. 248; Rushville v. Gas Company, 15 L. R. A. 321; State ex rel. v. Gas & Oil Co., 21 L. R. A. 639, 135 Ind. 54; State ex rel. v. Gas Co., 57 L. R. A. 761; Shepard v. Gas & Light Co., 6 Wis. 539; Gas Light Co. v. Collidig, 25 Md. 1; Williams v. Gas Co., 52 Mich. 499; Moray v. Gas Co., 38 N. Y. 185; Pub. Co. v. Associated Press, 184 Ill. 438; Waterworks Co. v. State ex rel., 46 Neb. 194; Gas & Mill Co. v. Mendenhall, 142 Ind. 538; Coy v. Gas Co., 146 Ind. 655; Munn v. Illinois, 94 U. S. 113; Railroad v. Transit Co., 45 N. J. Eq. 50. (2) When a dispute arises between a company and a consumer, the latter is entitled to have his

rights investigated by the courts. Sickle v. Gas Co.,
How. Pr. (N. Y.) 33; 66 How. Pr. (N. Y.) 314; 2 Page
on Public Corporation, sec. 835.   (3)  Gas companies
are somewhat public in their nature, and owe a duty
to supply gas to all.  Cook on Stock and Stockholders,
sec. 674; State v. Gas Light and C. Company, 34 Ohio
St. 572, 32 Am. Rep. 390; Gas Light Company v. Light
and H. P. Manufacturing Co., 115 U. S. 650; Public v.
Light Co., 45 Barb. 136; Gibbons v. Gas Co., 130 U. S.
396; Williams v. Gas Co., 52 Mich. 499, 50 Am. Rep.
266; Light Co. v. Richardson, 63 Barb. 437.

*Gage, Ladd & Small* for respondent.

(1)   The demurrer to the evidence was properly
sustained.  Grandy v. Hadcock, 83 N. Y. Supp. 90.   (2)
The provision in this contract that the gas might be shut
off unless all back bills—whether for gas used by the
applicant on said premises or on any other premises—
were paid, was, under defendant's franchise from the
city, perfectly valid.  Gas Co. v. Cadieux, 68 L. J. P. C.
126; Same v. Same, 11 Can. Q. B. 93; Commonwealth v.
Philadelphia, 132 Pa. St. 288, 19 Atl. 136.   (3). It is
well settled that a gas company has the right to make
reasonable rules for the transaction of its business, and
may shut off gas for failure to comply therewith.  State
ex rel. v. Gas Co., 34 Mo. App. 501; Wendall v. State,
62 Wis. 300; Williams v. Gas Co., 52 Mich. 499, 18 N. W.
236; Shiras v. Ewing, 48 Kans. 170, 29 Pac. 320; Har-
rison v. Water Co., 53 S. W. 993; Water Co. v. Stanley,
61 Pac. 518; Commonwealth v. Philadelphia, 132 Pa.
St. 288; 19 Atl. 136; Gas Co. v. Cadieux, 68 L. J. P. C.
126; Same v. Same, 11 Can. Q. B. 93.

JOHNSON, J.—It appears from the allegations of
the petition that plaintiff was a tenant from month to

month of a rooming house in Kansas City known as Number 1314 East Tenth street; that the house was properly fitted with pipes and fixtures for the consumption of gas for light and fuel; that defendant owned a franchise granted by the city and enjoyed a monopoly of the business of manufacturing and vending gas; that the pipes in plaintiff's house were connected with one of defendant's mains; that on February 10, 1903, defendant, at the request of plaintiff, undertook to supply gas for use in said house, "but thereafter, without any just cause or excuse, turned and cut off said gas from said house on the 16th day of February, 1903; that afterwards on the 18th day of February, 1903, plaintiff again applied to defendant and requested them to furnish gas for use in said house and tendered to defendant the sum of $30 as a deposit on account of any gas furnished and offered to make any deposit required by said company to secure payment for said gas and offered to comply with all reasonable rules and regulations of defendant relative to the use of said gas and payment therefor, but that the defendant refused and still refuses to furnish plaintiff gas for use in said house." Actual damages are laid at five thousand dollars for the recovery of which plaintiff prays judgment and in addition, she asks for punitive damages in the sum of five thousand dollars. At the conclusion of plaintiff's evidence, the learned trial judge ruled the facts adduced by her insufficient to support a cause of action, whereupon she took a nonsuit with leave to move to set the same aside. In due time, an appeal was granted to the Supreme Court but that tribunal held it had no jurisdiction and certified the cause to this court. [Vanderberg v. Gas Co., 199 Mo. 455.]

Plaintiff's family consisted of her husband, herself and their three children. They occupied an apartment of three rooms at the rooming house described in the petition. The husband's name was William Walter Murphy Vanderberg and he was a paper hanger engaged

in business in Kansas City. Plaintiff testified that for some years she had been engaged on her own account in the business of conducting a rooming house; that all of the household furniture used by her family had been bought by her and paid for out of her own money, and that she had attended personally to renting the premises where they lived and had paid the rent with money earned by her. It appears, however, that when she rented the premises at the office of the real estate agents who represented the owner, she was accompanied by her son whose name is Walter William Vanderberg. When the agent wrote the receipt for the first month's rent, he asked "What is the name?" and the young man, supposing he was being asked to give his name, replied "Walter W. Vanderberg." The agent then wrote that name in the receipt as the name of the tenant to whom the premises were rented and handed the paper to the son. Subsequent receipts for rent were invariably made out with the name of W. W. Vanderberg or W. Vanderberg as the tenant and were accepted without objection.

On February 10, 1903, plaintiff made written application to defendant for gas to be supplied to the rooming house and stated therein that the gas was "to be supplied to me, William Walter Murphy Vanderberg, at the premises No. 1314 East Tenth street, occupied by applicant as a residence" and agreed "that the duly authorized agents of the said company shall have free access to the meter and its connections at all reasonable hours and for any lawful purpose and may remove the same upon any failure to comply with the provisions hereof or with any of the lawful rules of the company." The application was signed W. W. M. Vanderberg by Mary Vanderberg. In explanation of the fact that she made the application in the name of her husband, plaintiff states that she told defendant at the time that she was the real applicant, but defendant told her to sign her husband's name as well as her own. In about a week after the gas

had been turned on, plaintiff, while in the office of defendant on some other business, was presented with two old bills which defendant claimed her husband had failed to pay. One was a bill for ten dollars which had been running for six or seven years, and which was for gas furnished at a place of business which the husband had conducted on Walnut street. The other was for $1.90 for gas furnished at a former residence of the family in Kansas City. Plaintiff paid the latter bill but refused to pay the other. A controversy ensued which extended over two or three days, when defendant brought matters to a head by shutting off the gas. Afterward plaintiff endeavored to persuade defendant to furnish her with gas on the representation that she was running the rooming house, that her husband had nothing to do with it, and that she would make any reasonable deposit of cash to guarantee the payment of her monthly bills. Her proposal was declined and this suit followed. There was evidence introduced which tended to show that actual damages had been sustained in consequence of the discontinuance by defendant of its service. Further, it was shown that defendant was operating under a franchise granted by Kansas City, and enjoyed a monopoly of the business of furnishing gas for light and fuel to its citizens. Among the provisions of the charter is one which gave to defendant "the right to shut off the gas from any consumer who may be in arrears for a longer period than fifteen days." The facts we have stated are those appearing in the record which are most favorable to the cause of action asserted and the determinative question we are called on to decide is whether or not they present a case which plaintiff was entitled to have submitted to the jury.

Defendant, as a manufacturer and vender of gas under the provisions of a charter granted by the city, must be classed as a public service corporation and not as a mere trading or manufacturing concern. Whether

or not the charter attempted to grant the exclusive privilege of using the public thoroughfares for the laying of gas mains and pipes, or whether or not the city could legally grant such exclusive privilege, the fact remains that the business of supplying the citizens of the municipality with gas for light and fuel, in its very nature, is a monopoly. Monopolies were odious to the principles of the common law, are still more hateful to the genius of republican institutions and their existence should be tolerated only in cases of necessity where the citizens whom they are designed to serve receive a reciprocal benefit from the grant equal to that bestowed on the corporation. As was well said by the Supreme Court of Indiana in State ex rel. v. Gas Co., 61 N. E. 674: "These rights (i. e. the right of eminent domain and the license to lay pipe lines through the public streets and alleys) which involve an element of sovereignty and which can only exist by grant from the public, are rooted in the principle that their existence will bestow a benefit upon that part of the public in whose behalf the grant is made, and the benefit received by the citizen is the adequate consideration for the right and convenience surrendered by him. The grant thus resting upon a public and reciprocal relation imposes upon the appellee a legal obligation to serve all the members of the public contributing to its asserted right impartially; and to permit all to use gas who have made the necessary arrangements to receive it and apply therefor and who pay, or offer to pay the price and abide the reasonable rules and regulations of the company." [Citing Portland Natural Gas & Oil Co. v. State, 135 Ind. 54; Coy v. Gas Co., 146 Ind. 655; Haugen v. Water Co., 21 Ore. 411; People v. Manhattan Gas Co., 45 Barb. 136; Crumley v. Water Co., 99 Tenn. 420; Am. Water Works Co. v. State, 46 Neb. 194; State v. Butte City Water Co., 18 Mont. 199.] Among the authorities sustaining these principles to which we have been cited are the following: Rushville v. Gas. Co.,

28 N. E. 853; Shephard v. Gas Co., 6 Wis. 526; Williams v. Gas Co., 52 Mich. 499; Inter-Ocean Pub. Co. v. Associated Press, 184 Ill. 438; Munn v. Ill., 91 Ill. 113; Gas Light Co. v. Manufacturing Co., 115 U. S. 650.

Where the charter, which must be regarded as a contract between the municipality and the grantee, fixes the rates the grantee may charge for service to consumers and prescribes the rules under which the grant may be exercised, the terms of the charter will control when not unreasonable. Where it does not attempt to fix rates nor to impose adequate restrictions upon the exercise of the grant, the grantee nevertheless will be deemed to have accepted the charter with the implied agreement that the rates charged by him for service shall be reasonable and uniform and that the rules and regulations prescribed by him for the governance of consumers shall be just and reasonable and shall be impartially applied to all consumers of the same class. Necessarily the courts are invested with jurisdiction over the question of whether any such rule or regulation is fair and just, or unreasonable and oppressive, and of the question of whether the conduct of the company in its dealings with a citizen conforms with its implied obligation to treat those who use or desire to use its product with impartiality and fairness.

With these principles in mind, we turn to the record to ascertain if plaintiff has adduced facts from which a reasonable inference may be indulged that she was denied the privilege of using the gas without just cause or excuse.

We do not sanction the argument of defendant that it had the right to refuse to enter into a contractual relation with plaintiff on the ground that she was a married woman living with her husband and that defendant could insist on the right of contracting with no other member of the family than its lawful head. Under the statutes relating to the status of a married wo-

man, she is made *sui juris* with respect to her own separate property, is given the right to contract, to sue and be sued and to engage in business in her own name, on her own responsibility and for her own account.  Plaintiff, though a married woman, could enter into a contract legally for the renting of real estate on her own responsibility and could use such real estate for business purposes of her own.  As she suffered under no legal disability with respect to such matters, the denial of her right to enter into a contract for gas to be consumed on premises rented by her on the sole ground that she was a married woman, would have amounted to a denial of an important contractual right accorded her by statute and, therefore, would have been unreasonable, arbitrary and oppressive.  The right which defendant had to require applicants for gas to secure the payment of their bills by a reasonable cash deposit could have been enforced against plaintiff as against any other applicant, but being *sui juris,* she was entitled to the privilege of a citizen who had equipped himself for the use of gas and who applied for the privilege of using it.

And, further, on the hypothesis that plaintiff had come to defendant as the tenant of premises where she desired to consume gas, defendant had no right to compel her to pay the debt of another as a condition without the performance of which it would not supply her.  The provision in the charter by which defendant could discontinue service to a delinquent customer is a reasonable regulation and, therefore, one which the courts will enforce.  Compelling applicants to deposit a sufficient amount of cash to guarantee the payment of monthly bills likewise is a reasonable regulation.  The company either would have to go out of business or else increase the rates charged to paying consumers to meet the loss of revenue from the failure of others to pay if it could not legally protect itself against such loss, by requiring cash deposits and by stopping its service to delinquents.

But there is no more reason for compelling a married woman to pay her husband's debt, for the payment of which she is not legally bound, than there would be for compelling her to pay the debt of a stranger. The attempt made by defendant to coerce her into paying such debt was unreasonable and her failure to submit to such coercion afforded no lawful excuse for defendant's refusal to enter into a contract with her.

But the weakness of plaintiff's case is that she has failed to show that she was in a position where she could legally demand the service of defendant under the principles we have stated. The contract she made with defendant shows on its face that it was a contract not between her and defendant, but between her husband and defendant. She cannot be permitted to contradict or vary the terms of that contract by oral testimony and, therefore, it is immaterial that in fact she may have intended to make a contract in her own behalf. She did not make such contract and, whatever her intention may have been, it is clear from her own testimony defendant had no intention of entering into a contract with her. The minds of the parties did not unite in an agreement of that character and, consequently, an essential element of a valid contract is lacking.

She cannot stand on that contract, and we pass to the question of her right, when she discovered that she had no contract with defendant, to insist that one be made with her. Here she is met with an obstacle in the fact that she was not the tenant of the premises. It would seem from her testimony that she intended to rent the property in her own name, but unfortunately for her, did not make that fact clear to the owner's agents. Whether they thought they were renting the property to her husband or her son, whose names are very similar, it is certain they did not rent it to her. A married woman who is living with her husband can be

126 App—39

held liable for the rent of the premises occupied by the family as a residence only when she has expressly agreed to charge herself personally with the payment of the rent. There is no evidence in the record of any such agreement made by plaintiff. The owner of the property could not have looked to her for his rent and, consequently, in no sense was she his tenant. We are of opinion that the defendant, as a reasonable regulation, could refuse, as it did, to supply gas for the premises without a contract executed by the tenant in possession who alone would have the right to give its servants reasonable access to the premises for the purpose of installing and maintaining a meter and periodically reading it to ascertain the amount of gas consumed. As plaintiff was in no position to demand the service, it is immaterial that the principal reason advanced by defendant for its refusal, namely, that she pay her husband's debt, was wholly without justification. The learned trial judge committed no error in compelling a nonsuit, and, accordingly, the judgment is affirmed. All concur.