McCallister *v.* Shannondale, etc., Tel. Co.—47 Ind. App. 517.

that the questions on the instructions have not been properly saved. That we do not decide; but, upon examination, we find no reversible error.

The sufficiency of the evidence to sustain the verdict is denied. The evidence is not, as to the traction company, entirely free from conflict, but it fairly supports the 13. verdict as to the negligence charged against said company and the freedom from negligence of appellee. That there may be some conflict as to the latter fact, is not enough to overthrow the general verdict.

Judgment affirmed.

---

## McCALLISTER ET AL. *v.* SHANNONDALE COÖPERATIVE TELEPHONE COMPANY ET AL.

[No. 6,903. Filed April 28, 1911.]

1. CORPORATIONS.—*Powers.*—Corporations have only such powers as are granted by the statutes under which they are organized. p. 524.

2. CORPORATIONS.—*Powers.*—*Telephones.*—Under §5789 Burns 1908, §4181 R. S. 1881, providing for the formation of companies for "establishing, maintaining and operating telephones, telephone lines, and telephone exchanges," and §5790 Burns 1908, §4182 R. S. 1881, providing that the incorporators shall file articles of association setting forth the localities within which the company purposes "to establish, maintain, and operate telephones and telephone exchanges," a telephone company whose articles of incorporation provide that such company "shall establish, maintain and operate telephones and telephone exchanges in the counties of Boone and Montgomery," has the power to establish, maintain, and operate "telephone lines," the latter statute which omits the words "telephone lines" prescribing merely what the articles of association shall contain. p. 524.

3. CORPORATIONS. — *Powers.* — *Contracts.* — *Impairment.*—*Partnership.*—The agreement of partners in a telephone business as to the manner that a corporation to be formed by them shall conduct its business is not binding upon the corporation, and a change of method does not impair any vested right belonging to any partner stockholder. p. 525.

McCallister *v.* Shannondale, etc., Tel. Co.—47 Ind. App. 517.

4. CORPORATIONS.—*Powers.*—*Telephones.*—A telephone corporation formed by partners who owned and kept in repair their own lines has the power, on amending its by-laws as provided thereby, to take over such individual lines on certain equal terms, the transfer to be optional with the individual, and to maintain and operate such lines as its own, treating all alike, though the contract between the partners provided for the retention and maintenance of the lines by the individual owners. pp. 525, 528, 529.

5. CORPORATIONS. — *Articles.*—*Statutes.*—*Contracts.*—*Merger.*—The articles of association and the law under which a corporation is formed constitute the final contract between the incorporators, all preliminary contracts being merged therein. p. 526.

6. CORPORATIONS.—*By-Laws.*—*Obligation of.*—The by-laws of a corporation, where they are duly enacted, and not in violation of the charter or laws under which the corporation was formed, are binding on all stockholders, and stockholders have no right which is infringed thereby except where a change therein impairs the obligation of a contract or vested right. p. 527.

7. CORPORATIONS.—*Management.*—*By-Laws.*—*Changes in.*—*Control by Courts.*—Courts will not interfere in the management of a corporation except where its charter rights are violated, or private rights arbitrarily invaded. p. 527.

8. CORPORATIONS.—*By-Laws.*—*Change.*—*Directors.*—*Election.*—*Presumptions.*—The action of corporation directors in changing, or proposing to change, the by-laws of a corporation is presumed to be for the honest purpose of promoting the corporation's welfare. p. 528.

9. CORPORATIONS.—*Stockholders.*—*Telephones.*—*Customers.*—In determining the rights of stockholders in a telephone company the courts will not consider their rights as customers of the company. p. 528.

10. CORPORATIONS. — *Telephones.* — *Rules.* — *Discrimination.*—Telephone corporations may establish and enforce reasonable rules, without discrimination, for the conduct of their business. p. 528.

11. CORPORATIONS.—*Stockholders.*—*By-Laws.*—*Change of.*—Original incorporators of a corporation are conclusively presumed to know that the corporation might, after its incorporation, exercise all of its charter powers, and subsequent stockholders must be regarded as having assented to the exercise of such powers. p. 529.

From Montgomery Circuit Court; *Jere West,* Judge.

Suit by David V. McCallister and others against the Shannondale Coöperative Telephone Company and others. From a judgment for defendants, plaintiffs appeal. *Affirmed.*

*S. E. Perkins, Jr., Fred McCallister, Clyde H. Jones* and *John B. Murphy,* for appellants.

*Crane & McCabe* and *Ira M. Sharp,* for appellees.

MYERS, C. J.—Appellants, as stockholders of the Shannondale Coöperative Telephone Company, brought this suit to enjoin appellees, as directors of said telephone company, from further assessing their stock, and from depriving them of telephone service through said company's exchange on account of refusal to pay said assessment.

The complaint was in two paragraphs, and such proceedings were had that a temporary restraining order was issued pending a final hearing of said cause. Later, appellants, by affidavit, charged Richard O'Rear, one of the appellees herein, and president of said company, with violating the order of the court theretofore made, and a citation was issued against him to show cause why he should not be punished for contempt of court.

By agreement, the contempt proceedings and the cause upon its merits were tried at the same time. The complaint and the supplemental complaint in one paragraph, answered by a general denial, closed the issues.

The court made a special finding of facts, stated four conclusions of law thereon, and rendered judgment in accordance with the findings and conclusions of law. The questions here presented arise upon the exceptions to each conclusion of law, with a proper assignment of error in this court as to conclusions of law numbered two, three and four.

The first conclusion of law has reference to the complaint as originally filed by appellants, and is in their favor. The issue tendered by the supplemental complaint, and the findings with reference thereto, form the basis for the second and third conclusions of law, which are in favor of appellees. The fourth is that O'Rear was not guilty of contempt of court, and should be discharged.

After a careful study of the special findings, which cover forty-four typewritten pages of the record, we have concluded that a brief statement of the case as presented by the facts found, showing in a general way the theory of each of the parties and the questions presented, will serve all necessary purposes for this opinion.

On June 11, 1901, the Shannondale Coöperative Telephone Company was incorporated under the laws of this State. The material part of the articles of incorporation reads as follows:

"Article 1.   The name of this corporation shall be the Shannondale Coöperative Telephone Company.

Article 2.   Said corporation shall establish, maintain and operate telephones and telephone exchanges in the counties of Boone and Montgomery, in the State of Indiana.

Article 3.   The amount of capital stock of said corporation shall be $600; said capital stock to be divided into 300 shares, at $2 a share.

Article 4.   The duration of this corporation shall be fifteen years."

Appellants are stockholders in the company, and some of them were its original incorporators.   The corporation was organized for the purpose of taking over the property and business of a copartnership theretofore engaged in operating a telephone company in and about the town of Shannondale, Montgomery county, Indiana.   The incorporators were members of said partnership, the business of which had been conducted under an agreement whereby each partner constructed, owned and maintained the telephone line from his residence to the firm's switchboard.   The firm's property consisted of a switchboard and lines of wire, known as trunk-lines, connecting said switchboard with other telephone exchanges, and was taken over by the corporation.   Immediately preceding the incorporation of said company, the members of the copartnership agreed not only to incorporate, but that the corporation should thereafter conduct its business in all material respects the same

as it had been conducted by the partnership, and its by-laws so provided. The corporation respected this agreement until December 15, 1906, when it appears that 162 shares of stock were outstanding and 135 telephones in use. At that time said property of the corporation was in need of repair, and the individual property of a majority of the stockholders—except wire, which was a part of said telephone system—required renewing. By reason of the defective condition of said property said telephone service was inefficient and furnished grounds for complaint, not only by the stockholders of said company, but by other exchanges with which it had connection under certain contractual relations, and which said exchanges were threatening to terminate on account of the unsatisfactory service furnished by said corporation. Some of the appellants had constructed their lines prior to said incorporation, and others after that time. Each line belonging to appellants was in fairly good repair, and worth from $10 to $75. Prior to the incorporation, the necessary expense to each partner, for repairs of the partnership property and for conducting the business, was from twenty to twenty-five cents a month. During the year 1906, the future policy of the company and the plan to be adopted in placing and keeping its property in repair, and also that of the individual stockholders belonging to its system, were frequently discussed by the stockholders and the board of directors. Finally the board decided that the lines of any and all stockholders who would assign them to the corporation without cost to it would be repaired and maintained by the corporation. Pursuant to such decision, the directors personally accepted the board's proposal, and assigned their lines to the company, the corporation also agreeing that the dues and assessments for any one year should not exceed $11. The assignment so made by the individual members of the board was on October 12, 1906, signed by twenty-two other stockholders, and on April 5, 1907, said assignment was accepted by the corpo-

522    APPELLATE COURT OF INDIANA,

McCallister v. Shannondale, etc., Tel. Co.—47 Ind. App. 517.

ration. Said contract and acceptance was in direct conflict with the by-laws theretofore adopted by the corporation and then in force. Appellants and other stockholders, on the conditions named, refused to assign their lines to the corporation, and denied the right of the corporation to accept such assignments, and the right of the directors to expend any of the corporation's money in the repair of private lines. The temporary restraining order then in force, among other things, provided that nothing therein contained should be construed to prevent, hinder or restrain the company from adopting and enforcing all by-laws, rules and regulations, which, under the laws of this State, it could lawfully adopt and enforce. On June 25, 1907, the annual stockholders' meeting was held, and the question of repairing said telephone system was discussed. The stockholders disagreed as to the right and policy of the corporation to repair individual lines, which the individual stockholders were willing to assign to the company. At that meeting directors were elected, and the meeting adjourned until July 2. On June 27 a meeting of the newly-elected board was held, and the by-laws of the company were declared to be imperfect and incomplete, and also that the dues charged were inadequate to pay the operating expenses of the company and maintain its exchange, and for other reasons set forth, and it was resolved that the by-laws of the company theretofore and then existing should be and were declared "annulled, revoked, repealed, vacated and set aside." A form of by-laws was then read, and at a later meeting, June 29, 1907, again read and adopted by the board as the by-laws of the corporation. Section twenty-two of said by-laws provides that the directors shall have power

"to fix and establish such rates of rental or charges for telephone service as such rates of toll for toll line service, and to increase or reduce the same from time to time as by said board may be deemed just and proper.

To establish such rules and regulations as by said board may be deemed reasonable and proper for the

enforcement of the collection of the charges for telephone service and tolls, and the terms and conditions upon which patrons may be furnished with telephone connections and telephone service, and the terms and conditions upon which lines will be extended to new patrons.''

The board also, after the adoption of said by-laws, passed the following resolution:

''Be it resolved that the dues or rentals for the use of the exchange, switchboard and trunk lines and other lines of this company shall be and the same are hereby fixed at $2 for the quarter beginning July 1, 1907, and ending September 30, 1907, and shall be paid in advance by each person having a telephone connected with said switchboard on the first Tuesday night in July, 1907. And resolved that any person failing to pay said dues or rentals on and when the same become due shall be denied service through said switchboard and over said lines during such time as the same shall remain unpaid.''

On July 2, 1907, the stockholders, pursuant to adjournment of June 25, met with ninety-three stockholders present in person, and nine were represented by proxies. The minutes of the meeting of June 25, and of the meetings of the directors on June 27 and 29 were read, and in all things approved and ratified by a vote of eighty in favor of, six against, and fourteen not voting. On September 27, 1907, the board fixed the rental for each telephone at $2 for the quarter ending January 1, 1908, and on the latter date fixed the rental at $2 for the quarter ending March 31. These dues were applicable alike to all shareholders, whether or not they assigned their lines to the corporation. Appellants paid the first $2, and it being admitted that the excess of the two-dollar rate that was necessary to pay the expenses of the company was to be used in repairing and maintaining residence lines assigned to the company, they refused to continue the payment of dues in excess of seventy-five cents per quarter, which latter sum they tendered to the company, which was refused, and appellants' lines

524    APPELLATE COURT OF INDIANA,

McCallister *v.* Shannondale, etc., Tel. Co.—47 Ind. App. 517.

were disconnected from the company's exchange. If the property of the corporation was in good repair, and no money was spent on private lines, the business could have been operated and maintained, and all of its necessary expenses paid, by quarterly dues from its shareholders of thirty-three and one-third cents a month. About 100 of the 135 shareholders having telephones in their residences assigned their telephone lines, which were practically worthless, to the company. The lines belonging to appellants were kept in repair by them, and are in serviceable condition, and were so at the time of the bringing of this suit. If all the private lines were assigned to the company, and all were in repair, the expense to appellants thereafter would be about the same as that necessary to keep up their individual lines.

Appellants insist (1) that the corporation, through its board of directors, is exceeding its corporate authority in establishing, maintaining and operating telephone lines; (2) that the agreement of the partners, as to the manner in which the corporation should carry on its business, entered into the formation of the corporation, and is binding upon it; (3) that the proposed plan of the board of directors would impair appellants' vested rights.

It must be kept in mind that this was a suit by appellants as stockholders, and not by them as customers of the company. The corporation was formed under a legislative enactment, and amendments and acts supplemental thereto, in force at the time of its organization (§§5789–5802 Burns 1908, §§4181–4183, 4185–4192 R. S. 1881, Acts 1899 p. 124, Acts 1903 p. 204, Acts 1885 p. 151), and its powers are thereby prescribed.

The articles of association follow the exact language of the statute, so that its powers, authority, and the business it may transact, are limited only by the law authorizing its creation. Section 5789, *supra*, authorized the corporation to establish, maintain and operate

telephones, telephone lines, and telephone exchanges in the counties named in its articles. This section provides that any number of persons may form such a corporation for the purposes therein specified, who shall, as provided in §5790, *supra,* join in the execution of articles of association setting forth precisely what is set forth in the articles before us. True, this latter section omits the words "telephone lines," but, as it seems to us, this section must be construed as fixing what the articles of association shall contain, in order that the corporation may do the things provided in the preceding section. So that when the two sections are construed together, it is clear that the charter here in question is broad enough to include the power to establish, maintain and operate telephone lines, although such right is not specifically mentioned therein.

Appellants' second and third propositions cannot be sustained. At the time this suit was commenced the corporation had not established, nor was it maintaining or claiming to maintain, any telephone lines. That part of the telephone system had been left to its customers, who paid a fixed charge for attaching their lines to the company's switchboard, and a fixed rental thereafter to cover its operating expenses. The board of directors now propose to extend the business of the corporation by establishing, maintaining and operating, as its own, lines from its switchboard to the residences of its customers, either by building new lines, or by taking over lines already constructed and belonging to its customers.

Appellants object to the taking on of this new business by the corporation, for the reason, as it appears from the findings, that if they are to have service they must keep up their own lines, and pay the same rental as those who have no lines. Also, because the new by-laws authorize the board of directors to do that which they have no right to do, under the agreement to incorporate, and by reason of which some of appellants, as incorpora-

tors, parted with their interest in the partnership property, and as to the others, no change in the business or the manner of doing it should be allowed, for the reason that when they took stock and constructed their lines they relied on the by-laws then in force.

The corporation made the same proposal to all of its customers; that is to say, that it would take over all of the individual lines, whether in repair or not, and where necessary put them in repair, and thereafter maintain them. No stockholder or customer is compelled to transfer his line to the company as a condition precedent to his receiving telephone service by the corporation. The only condition as regards service is that all must pay the same rental. The proposition is one affecting appellants as customers of the company, and not as stockholders, although at the time they were taken on as customers they were required to take stock. Their connection with the company in both of these capacities was in accordance with the by-laws of the company then in force, and which provided that they might be altered, amended or repealed at any regular or special meeting of the board, upon compliance with certain conditions. The board of directors followed the mode prescribed by the old by-laws in repealing them, and in adopting the new by-laws. The action of the board in all these matters was ratified by the stockholders.

The articles of association and the law under which the corporation is formed, must be regarded as the final agreement or contract of the incorporators. 1 Thompson, Corp. (2d ed.) §§312, 315, 317; 1 Morawetz, Priv. Corp. (2d ed.) §318. The preliminary agreement to form the corporation became merged in the final contract. "The grant by the state of the privilege of becoming a corporation, if accepted, must be accepted as granted. And the acceptance of this privilege by those to whom it is granted by the state, is made upon an express

contract with the state, and an implied contract as between themselves, that the privilege shall be held and exercised under the rules of the general law of the state which authorizes corporations and regulates and governs them." *Cronin* v. *Potters' Coöperative Co.* (1892), 29 Wkly. L. Bull. 52. The statute provides that "the board of directors shall adopt by-laws for the government of the corporation and the management of its business." §5794, *supra.*

It must be conceded that by-laws of a corporation, duly enacted, and not in contravention of the company's charter or laws under which it is formed, are binding 6. on all the stockholders of the corporation, and that minority stockholders have no rights, vested or otherwise, which are infringed by such by-laws, except where a change therein impairs the obligation of a contract or a vested right. *Purdy* v. *Bankers Life Assn., etc.* (1903), 101 Mo. App. 91; *Renn* v. *United States Cement Co.* (1905), 36 Ind. App. 149; *Van Atten* v. *Modern Brotherhood, etc.* (1906), 131 Iowa 232; *Alters* v. *Journeymen Bricklayers, etc., Assn.* (1902), 19 Pa. Super. Ct. 272; *Kent* v. *Quicksilver Mining Co.* (1879), 78 N. Y. 159.

While, as a general rule, every corporation has the inherent power, as an incident to its existence, to pass by-laws for its government and the management of its business, without interference by the courts, yet it is 7. equally well settled that courts will compel adherence to the charter and to the laws under which it is organized, and will interfere to prevent an unreasonable and arbitrary invasion of private rights. *Supreme Lodge, etc.,* v. *Knight* (1889), 117 Ind. 489, 3 L. R. A. 400. But courts will not interpose upon a showing that a better or wiser course might have been pursued, for that is a matter to be regulated in the selection of directors, who will adopt and carry out different plans.

In this case, on June 25, 1907, directors were elected,

528    APPELLATE COURT OF INDIANA,

McCallister v. Shannondale, etc., Tel. Co.—47 Ind. App. 517.

who proposed a change in the plan for conducting the business of the corporation. In the absence of a finding to the contrary, we must regard the motive which influenced the change as an honest one to promote the welfare of the company. At first it would seem that the proposed change will work an injustice to appellants, for it appears that unless they transfer their lines to the company they will not be on an equality with other customers in the way of cost or expense for like service. But again, this is a matter that affects them, not as stockholders, but as customers. As stockholders, they own an interest in the corporate property, and are entitled to share in its final distribution. They are entitled to share in the dividends of the corporation, and to take part in its internal affairs, while the customer has only the rights the corporation gives him through its contract.

The corporation may establish, promulgate and enforce reasonable rules and regulations for conducting its business, applicable alike to all of its customers alike situated, and this is true whether they are stockholders or not. *Irvin* v. *Rushville, etc., Tel. Co.* (1903), 161 Ind. 524; *Rushville, etc., Tel. Co.* v. *Irvin* (1901), 27 Ind. App. 62. Appellee company was authorized to do, and it appears that it was doing, a general telephone business, and so far as it is able must serve all within its local limits impartially and without discrimination. §5802, *supra; Central Union Tel. Co.* v. *State, ex rel.* (1889), 118 Ind. 194, 10 Am. St. 114; *Central Union Tel. Co.* v. *State, ex rel.* (1890), 123 Ind. 113.

The object of the proposed plan was the betterment and improvement of the telephone system operated by the corporation, of which appellants are stockholders. There is no finding that the proposal of the board, if carried out, will jeopardize or injure any of appellants' rights as stockholders. True, when the corporation commenced business it did not exercise all of the power or au-

McCallister *v.* Shannondale, etc., Tel. Co.—47 Ind. App. 517.

thority given to it, yet its by-laws at that time provided that they might be altered, amended, changed or repealed, thereby expressly reserving the right to adopt in the future such by-laws as changed conditions might demand or future experience show to be wise and expedient for the best interest of the corporation. "In such cases, where there is an exercise of the power in good faith, which does not change the essential character of the business, but authorizes its extension upon a modified plan, both reason and authority support the corporation in the exercise of the right." *Wright* v. *Minnesota Mut. Life Ins. Co.* (1904), 193 U. S. 657, 664, 24 Sup. Ct. 549, 48 L. Ed. 832.

Some of these appellants were original incorporators of the company, and must be presumed to have understood the provisions of the company's charter, and to have assented to the transaction of the business expressly or impliedly authorized by it. *Traer* v. *Lucas Prospecting Co.* (1904), 124 Iowa 107, 99 N. W. 290. At the time the other appellants became stockholders, the by-laws provided that they might be amended or repealed, and such stockholders were therefore bound to know that its by-laws were subject to change.

We are not persuaded that the change was an unreasonable or arbitrary exercise of power, nor was it the repudiation of a debt or any vested right. It was not unreasonable, because it may well be said that the system originally adopted was so infirm as to be incapable of long endurance. It was not arbitrary, because the by-laws reserved the right of amendment.

Judgment affirmed.