## DALLAS TELEPHONE CO. v. OAK CLIFF TRANSFER & STORAGE CO.  (No. 3033.)

(Court of Civil Appeals of Texas. Texarkana. March 5, 1925.)

**1. Telegraphs and telephones ⬳68(1)—Recovery for "inconvenience or annoyance" from discontinuance of telephone service held unauthorized.**

In action against telephone company for wrongful discontinuance of telephone service, there being no loss shown except pecuniary loss, there could be no recovery for inconvenience or annoyance suffered, as this would either allow double recovery for pecuniary loss or allow damages for vexation of mind; "inconvenience or annoyance" consisting of mental perturbation or vexation, not recoverable in such case, and especially so in partnership capacity.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Inconvenience.]

**2. Telegraphs and telephones ⬳33(3)—Discontinuance of telephone service for nonpayment of charge not breach of contract.**

Telephone company *held* entitled to suspend service over telephone for subscriber's nonpayment of rental charge, when monthly rental charge was in arrears, and company, in discontinuing service, not to breach its contract.

Appeal from Dallas County Court; Wiley A. Bell, Judge.

Action by the Oak Cliff Transfer & Storage Company against the Dallas Telephone Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

The appellee, a partnership, sued appellant, a telephone corporation, for damages for alleged wrongful discontinuance of service over their telephone, and the telephone company has appealed from a judgment against it. The suit originated in the justice court and was carried to the county court on appeal. It was alleged that by reason of the wrongful discontinuance of service the appellees (1) "were hindered and prevented from carrying on their business in their accustomed way, and were greatly inconvenienced, to their damage in the sum of $85," and (2) "by reason of inability to use the said phone for the purpose of calling out and soliciting business, the net profits for three days were lessened by the sum of $35 per day, to their damage in the sum of $105 as their loss of profit,'" aggregating a total damage of $190.

The evidence shows that the appellees were engaged in the transfer and storage business, and also "sold furniture." They were subscribers to appellant's telephone service, paying stipulated monthly charges therefor. The appellees had two telephones in their business office, and they were used as general business telephones "by their active manager, Mr. Kershaw, for soliciting business, and by customers in making calls for appellees' service." Both telephones were listed in the telephone directory in the appellees' name and with their place of business, and "anybody," as testified, could communicate with appellees' place of business over either one of the phones, and the appellees' manager could communicate with "anybody" over either one of the phones from their place of business. As testified, "I had two phones, so if one was busy I could use the other." It appears that on July 21, 1922, the telephone company discontinued service over one of the telephones, and it remained discontinued during that day and on the 22d and a part of the 23d. Service was fully restored on the afternoon of the 23d. The service over the other phone was not disturbed. The service over the one phone was discontinued to the extent only as to outgoing calls by appellees. The incoming calls were not affected. As testified by appellees:

"When the telephone was cut off, I could not telephone any one—could not get the operator. People could phone in to us (over it), but we could not call up anybody over it."

The telephone service on this telephone was discontinued because, as it appears, the monthly telephone charge due was unpaid after due demand therefor. The amount of the charge was the usual charge, and was correct. In virtue of the disconnection of the outgoing calls over the particular telephone, the evidence in the record, in respect to damage occasioned to appellees, entirely points in a general way only to the "loss of business" through inability to solicit over the telephone. The proof of "loss of business" lies in the comparison of the receipts during the period of discontinuance with the receipts during the two days immediately before the day of discontinuance. The loss of only one special case of transfer service is undertaken to be testified about. The appellees' manager testified, and that is all the evidence, that—

"I keep a record in my office of the receipts of the business. After the telephone was cut off, and during that three days, my receipts in the business were something like $100, $105, or $115 less than immediately preceding the time the telephone was cut off. Other things were about the same during those three days as before, and the weather conditions were the same. There was no reason why my business should fall off during those three days other than the cutting off of my telephone service. The amount of my income from the operation of my business was as follows: On July 18, $51; on July 19, $60; on July 20, $35.-50; on July 21, $57.35; on July 22, $47.75; on July 23, $35.25. The expenses of operating the business were the same as before that time. My expenses are $46 per day. I know I lost lots of business on those dates by not having telephone service. I know I lost a $100 job on Haines street that I have not brought into this suit at all. The way I know I lost the job, the $100 job, was because the gentleman said so."

On cross-examination the witness said:

"Yes, I could have gotten this $100 if I had been watching my chances; but still I was paying for two telephones. My phone was so busy so long I could not get that job; busy by people calling our office, and busy by people in our office calling others; busy both ways. The phone was disconnected only one way; that is, people who desired to call us up could call us; they could call us over either one of the phones. * * * On July 21, I didn't even know my phone was disconnected. I didn't find it out until the 22d. I don't suppose I used that phone on the 21st, as I do not do all of my business over that phone.

"Q. Then if you lost any business, it was not due to the disconnection of the phone. A. I don't know whether it was or not."

Nelson Phillips and C. M. Means, both of Dallas, for appellant.

W. F. Bane and Lawrence H. Rhea, both of Dallas, for appellee.

LEVY, J. (after stating the facts as above). [1] The court's charge on the measure of damages authorized the jury, in estimating the compensation allowable to appellees, to "take into consideration inconvenience, or annoyance, if any, which the plaintiff may have suffered, as well as loss of business." Therefore the plaintiff was permitted to recover accordingly for "inconvenience or annoyance" suffered, in addition to the pecuniary loss sustained in business ways, in consequence of the alleged wrongful partial breach of the contract of telephone service. The charge has

the effect either to allow a double recovery for pecuniary loss, or to allow damages both for pecuniary loss in business and vexation of mind. Either construction of the charge would render it legally improper to submit to the jury in the case. No damage or loss was shown except pecuniary loss in business. The "inconvenience or annoyance" consisted of mental perturbation or vexation, and not as a sequence of harmful effects. Such mental distress, as here, is not an element of damages legally recoverable generally in cases of this character, and especially so in a partnership capacity.

[2] Appellant further insists that there is no sufficient proof of loss of profits to support a recovery therefor, and that the undisputed evidence shows the appellees were in arrears for telephone service, entitling the appellant to suspend service over the telephone. The proof offered by the appellees would be regarded as too uncertain and conjectural to support a claim for loss of profits, except for the one fact appearing that "I know I lost a $100 job on Haines street." As respects the appellant's other contention, the evidence does affirmatively show that the appellees were in arrears for the monthly charge for the telephone service, and that it was not paid before the day of discontinuance of the service. The evidence is not capable of any other reasonable conclusion than that appellees actually and admittedly owed $9.50 for the monthly rental charge of March, 1922, and that, although demanded, it was not paid until July 23, 1922, after the telephone was discontinued. More extended comment on the evidence is unnecessary. A verdict to the contrary could not, in fact, be sustained. In this conclusion there was no wrongful breach of contract on appellant's part, since it had the right to discontinue the service for the nonpayment of the charges, which were just and correct. Withers v. Fort Worth Gas Co. (Tex. Civ. App.) 238 S. W. 324. And there was no waiver, or plea of waiver, of the right to discontinue the service.

Accordingly, the judgment of the court is reversed, and judgment is here rendered in favor of appellant, with all costs incurred in both of the trial courts and by reason of this appeal.