**COMMUNITY NATURAL GAS CO. v. MOSS.**

No. 1020.

Court of Civil Appeals of Texas. Eastland.

Nov. 25, 1932.

■

Marshall Newcomb, of Dallas, and Conner & McRae, of Eastland, for appellant.

Frank Judkins, of Eastland, for appellee.

LESLIE, J.

The appellee, Moss, has not briefed this case and we are without the benefit of that aid in disposing of this appeal. The case appears to have been originally filed in the justice court for damages alleged to have been occasioned him by the defendant's act in cutting off the natural gas from his residence. In the justice court the plaintiff obtained a judgment, and the case was appealed to the county court, where a trial was had resulting in a judgment in favor of plaintiff for the sum of $195, from which this appeal is prosecuted.

On March 24, 1931, the date the gas was cut off, the Community Natural Gas Company was a public service corporation, engaged in furnishing and distributing natural gas for fuel and other purposes to the city of Eastland and the citizens thereof. This service was rendered in compliance with franchise rights and in accordance with well-defined rules and regulations generally understood and uniformly applied and enforced toward all the consumers of gas. The plaintiff Moss at such time was a regular consumer of gas under such rules and regulations, with the obligation resting upon him to pay at a defined date on each month for the gas consumed during a certain month prior thereto.

In the lower court the pleadings were oral, and in so far as material to the issues here involved, the plaintiff, among other things, alleged that, on March 24, 1931, when the gas was cut off, he (Moss) owed the gas company the sum of $3.38 for the month's gas, and that on said date the gas company was indebted to him in the sum of $10 with 6 per cent. interest thereon since January 1, 1931. That, under these circumstances, and over his protest, the gas company, notwithstanding said deposit of $10, cut off the supply of gas at his residence which was equipped for using the same, and that as the result he and his family were left without fuel for any purpose. That he was unable to secure gas elsewhere since the·gas company had a monopoly on that business in the city of East-

land, and that by reason of these circumstances he was damaged in the sum alleged.

In response to these pleadings and issues, the defendant gas company alleged that originally it had contracted with the plaintiff for the gas service, and had installed a meter at his residence and supplied gas to him under its rules and regulations which were known to the plaintiff at the time he contracted for the gas and gas service. That on the 5th of March, 1931, defendant presented to the plaintiff a regular monthly bill amounting to $3.38 for gas delivered to him between January 24 and February 24, 1931. That said bill was not paid when due, and that after repeatedly notifying plaintiff of that fact, the defendant finally notified the plaintiff that it would become necessary for it to discontinue its gas service to him because of his failure to pay the bill. On March 24, 1931, the defendant did discontinue its gas service to the plaintiff and removed its meter from his premises. That immediately after discontinuing the gas service the defendant deducted from the sum of money ($10) which plaintiff had placed with the defendant to secure the payment of gas bills, the sum owing it for gas furnished to the plaintiff and for which he had failed to pay. That the balance of said security deposit, together with accrued interest on the full amount of the deposit at the rate of 6 per cent. was immediately returned to the plaintiff, Moss.

The defendant further alleged that, in all the acts and conduct in discharging its duties and obligations as a public service corporation to furnish gas to the plaintiff under its rules and regulations, it had acted in a reasonable manner, and that its acts were not intended or calculated to injure, harass, or inconvenience the plaintiff.

This case does not involve any dispute (1) over the amount of the bill, (2) any defect in the meter or correctness of its registration, (3) question of overcharge by the company, or (4) waiver on its part of its right to disconnect its gas service because of plaintiff's failure to pay said bill.

In fact, the plaintiff brings and prosecutes this suit solely on the fact and theory that, since his gas bill ($3.38) did not exceed the amount of his security deposit ($10), the defendant gas company therefore had no right to discontinue its gas service to his residence, but was obligated to continue to supply gas to him until he had used a sufficient amount of the same to balance off the security deposit. This presents the sole contention, and in response thereto the appellant urges the proposition that, there being no testimony or evidence to show that the defendant had invaded plaintiff's rights or had breached a duty owing to the plaintiff in cutting off his gas, and the plaintiff's testimony having conclusively established that he had failed to pay his gas bill when due, the trial court erred in refusing to grant the defendant's motion for an instructed verdict.

The question presented by the above conflicting contentions is not a new one, and has long been settled by the decisions of this and other states. This conclusion is rested upon the following groups of authorities:

On the right of a gas company to discontinue service for nonpayment of a bill: Withers v. Ft. Worth Gas Co. (Tex. Civ. App.) 238 S. W. 324; Dallas Tel. Co. v. Oak Cliff Transfer, etc., Co. (Tex. Civ. App.) 270 S. W. 577, 579; City of Mansfield v. Humphreys Mfg. Co., 82 Ohio St. 216, 92 N. E. 233, 31 L. R. A. (N. S.) 301, 19 Ann. Cas. 842; Southwestern Tel. & Tel. Co. v. Danaher, 238 U. S. 482, 35 S. Ct. 886, 59 L. Ed. 1419, L. R. A. 1916A, 1208; Gary Heat, Light & Water Co. v. Christ, Ind. Pub. Serv. Comm., P. U. R., 1921C, 355; Kentucky Utilities Co. v. Warren Ellison Cafe, 231 Ky. 558, 21 S.W.(2d) 976 (3-7); Annapolis Public Utilities Co. v. Martin, 131 Md. 393, 102 A. 465; Thornton's Law of Oil & Gas (4th Ed.) § 623, p. 1300.

On the right of a gas company to discontinue service for nonpayment of a bill when customer's security deposit exceeds the amount of the bill, see: Texas Power & Light Co. v. Taylor (Tex. Civ. App.) 201 S. W. 205, 206; Hewsey v. Queens Borough Gas & Electric Co., 47 Misc. 375, 93 N. Y. S. 1114; 28 C. J. p. 567.

In the case of Dallas Telephone Co. v. Oak Cliff Transfer, etc., Co., supra, the telephone company disconnected its service to the appellee's place of business because the monthly telephone charge was unpaid after due demand therefor. The charge was correct and the usual one for the service. Loss of profits in business, resulting from the discontinuance of the phone service, formed the basis of the suit. In disposing of the case the court said: "As respects the appellant's other contention, the evidence does affirmatively show that the appellees were in arrears for the monthly charge for the telephone service, and that it was not paid before the day of discontinuance of the service. The evidence is not capable of any other reasonable conclusion than that appellees actually and admittedly owed $9.50 for the monthly rental charge of March, 1922, and that, although demanded, it was not paid until July 23, 1922, after the telephone was discontinued. More extended comment on the evidence is unnecessary. A verdict to the contrary could not, in fact, be sustained. In this conclusion there was no wrongful breach of contract on appellant's part, since it had the right to discontinue the service for the nonpayment of the charges, which were just and correct."

As authority for the foregoing statement of the law, the court cited Withers v. Ft.

Worth Gas Company (Tex. Civ. App.) 238 S. W. 324, 325. In that case the question arose as to the right of the gas company to cut off the gas from a delinquent consumer. The court said: "The conclusion stated that the rule established by the plaintiff to cut off the supply of gas to a consumer upon his refusal to pay for gas previously furnished is a reasonable one, is supported by practically all the authorities, speaking generally. 2 Thornton on Oil & Gas, § 623, and decisions there cited; also Irvin v. Rushville Telephone Co., 161 Ind. 524, 69 N. E. 258; Shiras v. Ewing, 48 Kan. 170, 29 P. 320; Commonwealth v. Philadelphia, 132 Pa. 288, 19 A. 136."

In 28 C. J. p. 567, the rule is thus stated: "It is a general rule, both under statute and apart from the statute, that a gas company may refuse to furnish a consumer with a further supply of gas because of the nonpayment of arrearages for gas already consumed, and this may be done, although the consumer is solvent or the deposit provided for has not been used up by charges for gas * * *."

In the consideration of the same question as that here involved, the Indiana Public Service Commission, in passing on the right of a gas utilities company to disconnect service for nonpayment of bills, said: "Petitioner is engaged in the business of producing, delivering and selling its gas service to its consumers or customers as a public utility. Its principal revenue is derived from its consumers, all of whom must be treated alike without discrimination of any kind or character. The utility has a right to establish reasonable rules for the payment of its bills, and to require all its consumers to abide by such rules. If certain consumers were permitted to pay for the service at their own convenience, or were permitted to avoid payment altogether, it would be an unjust and unlawful discrimination against those consumers who do promptly meet their bills. A public utility has ample authority for disconnecting and refusing to serve a consumer who, after a reasonable opportunity has elapsed, has failed, neglected, or refused to pay for the service already rendered to him. State ex rel. Goodwine v. Cadwallader, 172 Ind. 619, [87 N. E. 644, 89 N. E. 319]; Irvin v. Rushville Co-op. Telephone Co., 161 Ind. 524, 69 N. E. 258; Rushville Co-op. Telephone Co. v. Irvin, 27 Ind. App. 62, 59 N. E. 327; McCallister v. Shannondale Co-op. Telephone Co., 47 Ind. App. 517, 94 N. E. 910; Western U. Teleph. Co. v. McGuire, 104 Ind. 130, 2 N. E. 201, [54 Am. Rep. 296]; Southwestern Teleg. & Teleph. Co. v. Danaher, 238 U. S. 482, P. U. R. 1915D, 571, 35 S. Ct. 886, 59 L. Ed. 1419, L. R. A. 1916A, 1208; Mackin v. Portland Gas Co., 38 Or. 120, [61 P. 134, 62 P. 20], 49 L. R. A. 596." P. U. R., 1921C, 355.

Upon the other phase of the contention, resting upon the legal effect of a customer's deposit for security in this character of case, attention is here directed to the opinion in Texas Power & Light Co. v. Taylor, supra. There, a deposit of $2.50, analogous to the deposit in the instant case, was required by the light company as a security from its patrons, and while operating under such a regulation, it cut off the service of a patron whose bill for $1.60 was not paid when due. Although at the time the service was withdrawn the bill actually amounted to more than the deposit, nevertheless that was deemed immaterial, and the court, in passing upon the light company's rights in the premises, said: "Appellant did nothing but what it had a right to do under its contract, and as shown, even if the amount of $2.50 deposited by appellee had been sufficient to cover the amount of his bill due, it would not affect the status of the matter, as it was a mere security, and did not affect appellant in proceeding to collect its monthly bills."

The Supreme Court of New York, in passing upon the same question and viewing it in the light of statutory provisions in that state, said, in Hewsey v. Queens Borough Gas & Electric Co., 47 Misc. 375, 93 N. Y. S. 1114: "Section 68 of the transportation corporations law (Laws 1890, p. 1149, c. 566) authorizes a gas or electric lighting company to cut off the supply of a customer if the latter shall neglect or refuse to pay the rent or remuneration due. It satisfactorily appears that there was a sum due from plaintiff, and that she neglected to pay, after due notification to and demand upon those whom she had left in charge of her house. The deposit provided for by section 66 (page 1148) of the same act is not provided for as prepayment of rent, nor is it required to be made for the benefit of the customer, but for that of the company, and the latter is entitled to require that it be kept intact during the continuance of the relation. There is no warrant in the statute for the proposition that the company is prohibited from cutting off the supply of gas until the amount of the deposit has been used up by charges for gas supplied. The defendant was, therefore, within its rights in cutting off plaintiff's gas and no action will lie for damages therefor."

The reasons which justify such legislative enactments equally warrant and justify rules and regulations to effectuate the same purpose. The reasonableness of the rule requiring a deposit of $10 as security in the instant case is not questioned. The practice or rule itself is sanctioned by the statutes of this state (article 1440, Rev. St.), which requires that the public utility pay the depositor 6 per cent. per annum thereon from the 1st day of January. As said in Union Light, H. & P. Co. v. Mulligan, 177 Ky. 662, 197 S. W. 1081, the requirement that the company should

pay interest upon the deposit is but the complement of the rule that it may require a deposit. One part of the rule is for the protection of the company, the other for the protection of the consumer, and, we add, for the protection of consumers generally. The rule has legislative and judicial sanction generally. 28 C. J. p. 566, §§ 28 and 29; Municipal Corporations (Dillon) vol. 3, p. 2218, § 1321. Concerning it and its purpose, the opinion in Vanderberg v. Kansas City Missouri Gas Company, 126 Mo. App. 600, 105 S. W. 17, 20, says: "The company either would have to go out of business or else increase the rates charged to paying consumers to meet the loss of revenue from the failure of others to pay if it could not legally protect itself against such loss by requiring cash deposits and by stopping its service to delinquents."

This is in harmony with the rule recognized and announced in the case of Texas Power & Light Company v. Taylor, supra.

In the light of the decisions it is obvious that, if the security deposit be applied to the current or recurring monthly bills and service until such deposit is exhausted, the consumer who pays his bills when due would be discriminated against. The result of such a practice would be that the consumer who ·pays promptly would keep his deposit intact, and the one who did not would seldom have on deposit a sum in keeping with the rule, or in excess of the current bill. The application of the deposit to the bills would call for new and additional deposits from time to time, and since the law requires payment of interest on the same, much unnecessary bookkeeping and the expense incident thereto would be incurred. Ultimately these would be passed as an extra burden to the paying consumers, or the company would probably cease to do business. Finally, if the deposit amounted to nothing more than an advance payment of the gas bills, it would utterly fail of its purpose as a security. Certainly the deposit is not a prepayment of bills. While indirectly a deposit for security inures to the benefit of all consumers, primarily it is for the benefit of the company, which pays interest thereon, and the company is entitled to require that it be kept intact during the continuance of the relation. Hence, under the facts of this case there is no warrant in law for the proposition that the company is prohibited from cutting off the supply of gas until the amount of the deposit has been used up by charges for gas supplied. The relation of the parties was assumed in view of the company's rules, the reasonableness of which is not attacked.

Upon the conclusive showing of fact, and under the foregoing authorities, the defendant's proposition under consideration must be sustained.

For the reasons assigned it becomes necessary to reverse the judgment of the trial court and here render the same in favor of the defendant. It is so ordered.