## Illinois Central Railroad Co. v. J. J. Rice, Judge.

(Decided May 30, 1913.)

### Appeal from Muhlenberg Circuit Court.

1. Writs—Writs Court of Appeals May Issue.—Under section 110 of the Constitution, the Court of Appeals has power to issue such writs as may be necessary to prevent a miscarriage of justice in extraordinary cases where there is no other adequate remedy.

2. Writs—Cases in Which Court of Appeals Will Issue Temporary Writ.—The court will issue a temporary writ in such cases where this is necessary in order that an appeal prayed and granted, may not be abortive, there being no other remedy.

TAYLOR & EAVES, TRABUE, DOOLAN & COX, BROWDER & BROWDER, BLEWETT LEE and R. V. FLETCHER for plaintiff.

WALKER WILKINS, MILTON CLARK, C. A. DENNY, T. O. JONES for respondent.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Granting writ to stay court of inferior jurisdiction.

Section 110 of the Constitution, prescribing the powers of this court, provides:

"Said court shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdictions."

Under this provision is has been held that where there is no other adequate remedy, an appropriate writ may be issued by this court to prevent injustice being done in an inferior jurisdiction. In Rush v. Denhardt, 138 Ky., 248, after pointing out that the above constitutional provision gives the court a large discretion, and that this would not be exercised ordinarily to stay a court of inferior jurisdiction from hearing a case in which no appeal could be taken, the court said:

"But we have the power, whenever justice and the right of the matter seem to demand it, to interfere in behalf of a petitioner who has no adequate remedy or means of obtaining relief except to invoke the extraordinary power conferred on this court by the Constitution. And a case might present itself in which the ends of justice would require us to issue the writ to restrain an inferior jurisdiction from doing an act or rendering a judgment that the complaining party in the ordinary course of judicial procedure would have no relief against. As courts are established to administer justice, why should not the highest court in the State, when there is no other adequate remedy, in the exercise of the ample and unquestioned power conferred upon it, lay its superintending hand upon any inferior jurisdiction that is about to commit a judicial wrong and compel it to administer justice according to the right of the case?"

This application by the Illinois Central Railroad Company against J. J. Rice as judge of the Muhlenberg Quarterly Court, is based upon a petition which sets out in brief the following facts: After the decision of this court in Illinois Central Railroad Co. v. River & Rail Coal Co., 150 Ky., 489, the miners in Muhlenberg County, numbering in all about 1,600, conceiving that they were entitled to maintain actions for the damages sustained by them from the failure of the railroad company to furnish cars to the mine operators who employed them, held a number of meetings, the result of which was the determination that the miners should severally file in the Muhlenberg Quarterly court a suit for damages in the sum of $25, the amount of damage being fixed at that sum so that no appeal could be prosecuted from the judg-

ment of the court. After forty-one suits had been filed all upon a printed form, the railroad company began in the Muhlenberg Circuit Court a suit in equity setting up that a common question was inolved in all the actions and asking that to prevent a multiplicity of suits the circuit court enjoin the prosecution by the miners of the several actions in the quarterly court and require them all to set up their claims in one action. The circuit court on a hearing of that case refused to grant the injunction and sustained a demurrer to the plaintiff's petition. The plaintiff declined to plead further, and its petition being dismissed, prayed an appeal to this court, which was granted. Thereupon the railroad company filed in this court its petition setting up the above facts and praying that this court issue its writ requiring the judge of the quarterly court to proceed no further in the cases before him, and has entered a motion that the court issue a temporary writ restraining the defendant until the merits may be heard. The case has been submitted on this motion. It is charged in the petition among other things that if no relief is granted 1,600 suits will be filed and judgments entered and that the quarterly court judge is a candidate for re-election, and that the defendants expect and intend to impose upon him to induce him to render a judgment in each of the cases from which no appeal may be taken, and that the applicant will be left without remedy.

We do not deem it proper at this stage of the proceeding to pass upon the merits of the controversy or to intimate any opinion thereon; but it is manifest that if the quarterly court judge is allowed to go on and try out the cases that are now before him, and this court should on the appeal of the injunction suit above referred to, reverse the judgment in that case and hold that the plaintiff was entitled to the relief sought, or any part of it, the reversal would come too late to affect in any way the plaintiffs in the cases referred to. It is estimated that the judgments in all the cases brought and about to be brought would aggregate $50,000, and it seems to us that an extraordinary situation is here presented requiring the interposition of this court. On the other hand, the merits of the controversy should not be determined in this proceeding against the quarterly court judge, and should only be determined in the equity case in which the real parties in interest are before the court. The quarterly court judge has done no wrong. He has done noth-

ing more than it was his duty to do, and will be liable to no cost in this proceeding. But that justice may be done, and the rights of the parties intelligently determined, a preliminary writ will issue restraining the quarterly court judge from further proceeding in the cases before him until the appeal in the equity suit above referred to, may be heard and determined, provided the transcript for that appeal is filed with the clerk of this court within sixty days from the making of this order and the appeal is duly prosecuted. This application will be set for hearing with that case at the September term of the court, and will then be finally disposed of.

The motion for the preliminary writ as above indicated is granted.