## Union Light, Heat & Power Company, et al. v. Mulligan, et al.

## Union Light, Heat and Power Company, et al. v. Tracy, Judge.

(Decided November 9, 1917.)

Appeals from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

Application for writ of prohibition.

1.  Public Service Corporations — Supply to Private Consumers.
    —The general rule is that a public service company, furnishing
    gas, electricity, water, or telephone service may require that
    charges shall be paid for a reasonable term in advance, or be
    secured by a reasonable deposit by the consumer, and may en-
    force such a requirement by the refusal of service to persons
    who do not comply therewith.

2.  Gas—Supply to Private Consumers—Deposit.—A deposit required
    from a consumer of gas by a gas company to secure the payment
    of the consumer's gas bill is not an increase in the rate which
    the consumer pays for gas, since the company holding the de-
    posit is liable for interest thereon to the depositor.

3.  Pleading—Practice—Parties.—Section 25 of the Civil Code of
    Practice which authorizes one person to sue for the benefit of all
    persons where the question involves a common or general interest,
    does not authorize one who makes a deposit with a gas company
    to secure the payment of his gas bill to sue on behalf of all the
    depositors to recover their deposits.

4.  Contempt—Void Judgment.—Where a circuit court had no juris-
    diction of the subject matter of a case out of which proceedings
    for contempt grew, a judgment punishing one for contempt is
    void.

5.  Appeal and Error—An appeal lies in cases of civil contempt.

    ERNST, CASSATT & COTTLE and MATT HEROLD for appellant.

    STEPHENS L. BLAKELY for appellees and respondent.

OPINION OF THE COURT BY JUDGE MILLER—Reversing judgment in first case and granting writ of prohibition in the second case.

The appellant, the Union Light, Heat and Power Company, hereinafter called the company for brevity, supplies natural gas to the residents of the city of Covington under a franchise contract which permits the company to charge not exceeding thirty cents net per thousand cubic feet. For several years, at least during the period covered by this controversy, the company has charged the maximum contract price of thirty cents per thousand cubic feet.

In June, 1916, Mary Mulligan and ten other gas consumers filed their joint action against the company alleging as causes of action that the company had been overcharging some of the paintiffs by demanding advance payments or deposits of money to secure the payment of gas consumed by them, and had been charging others of the plaintiffs with the cost of the installation of service pipes leading from the company's main to the consumer's residence. By way of relief they prayed for a recovery of their money so paid and for a decree enjoining the company from further requiring and demanding deposits or advance payments.

After the plaintiffs had been required to paragraph their petition so as to state the several causes of action in separate paragraphs, they were further required to elect which of the causes of action they would prosecute. They elected to prosecute under the first paragraph for a recovery of their deposits. The plaintiffs who joined in that paragraph were thirty-three in number, and their several claims aggregated $172.00, the largest being for $25.00 and the smallest for $3.00. They alleged that the questions involved in the action were of a common and general interest to all of the many consumers of gas in the city of Covington; that the consumers were numerous; that it was impossible to bring all of them before the court within a reasonable time; and that the plaintiffs brought the action, not only on their own behalf and benefit, but on behalf and for the benefit of all other consumers of gas and electricity within the city of Covington.

Conceiving that the causes of action of the several plaintiffs were several and not joint and could not be joined, the company moved the court to require the plaintiffs to elect which one of them would prosecute the cause of action set up in the first paragraph, and to strike

from the paragraph the names of all the other plaintiffs. This motion was overruled.

The company then moved the court to strike from the petition the allegation that the questions involved were of a common and general interest to all the consumers of gas living in the city of Covington and that the plaintiffs brought this action in their own behalf and on behalf and for the benefit of all the consumers of gas and electricity within the city of Covington because they were many and unknown to the plaintiff and it was therefore impossible to bring them all before the court within a reasonable time. This motion raised, in a different way, the same question that had been theretofore decided upon the motion to elect as between the parties plaintiff; and it was likewise overruled.

The company then filed a demurrer to the jurisdiction of the circuit court upon the ground that none of the demands of the paintiffs was for as much as $50.00; but the demurrer was overruled.

By way of answer the company denied that some of the paintiffs had made any deposits.; and it also denied that the questions involved were of a common or general interest. The answer also affirmatively alleged that in the conduct and operation of its business of supplying gas to consumers, it was necessary for the company to. adopt certain rules and regulations; that one of the rules adopted by it requires all consumers of gas to deposit with the company a sum in advance payment, to secure it against loss, sufficient in amount to cover the gas bill for the usual period of payments, the deposit to be returned to the consumer when it ceased to use gas and surrendered his deposit receipt issued to him by the company.

Another rule of the company provides that all gas bills must be paid on or before ten days subsequent to the rendition of gas bills; and, yet another rule provides that consumers owning real estate in Covington, and consumers owning no real estate in that city, but who give to the company a written guarantee, signed by an owner of real estate, in said city as guarantor, other than married women, were not required to make a deposit or advance payment if they make such fact known to the company when they apply for gas service. The answer further alleged that the deposit made by each plaintiff had been made at a time different from that of any other plaintiff, extending over a period of many years, and

that each plaintiff's deposit constituted a separate trans-action between the depositor and the company.

Upon the motion of the plaintiff the plea of the rule as above stated was stricken from the answer as being immaterial. Thereupon the company filed an amended answer alleging that at the time the ordinance fixed the gas rate at thirty cents per thousand cubic feet was adopted it had for more than sixty years been the uniform, continuous and well established custom and usage for gas companies furnishing gas to consumers to demand a reasonable deposit from consumers as security for the payment of gas bills, and that, when the contract ordinance was accepted by the company it was contemplated by the parties to the contract that the company could and would demand, and the consumers would make, a reasonable advance payment to, or deposit money with it, to secure the payment for gas furnished to consumers.

To this amended answer a demurrer was sustained; whereupon the company declined to further plead and moved to submit the action for judgment. The motion was sustained and the case was submitted on December 18, 1916.

On January 16, 1917, the plaintiff moved the court to set aside the order of submission and the motion was sustained over the company's objection, whereupon the plaintiff, over the objection of the company, withdrew so much of the petition as amended and the prayer thereof, as asked for an injunction.

The court then entered an order referring the action to the master commissioner of the court with instructions to ascertain the amounts paid by the plaintiffs and other gas consumers to the defendant company, under the contract of 1909 between the city and the company; when said amounts were paid as deposits; what sums in the possession of the company had been paid to it as deposits to secure the payment of gas bills; and to whom said sums were due. The order further directed the company to submit its books and records to the master, from which the master was directed to prepare a statement of the facts submitted to him by the order.

After the plaintiffs had withdrawn their allegation and prayer for an injunction, the company renewed its special demurrer, on the ground that since none of the plaintiff's payments was in excess of $50.00 and the question of equity jurisdiction for injunctive relief had been eliminated from the case, the circuit court was

without jurisdiction to try the case; and it also renewed its motion to require the plaintiffs to elect as between themselves, as to who would prosecute the action since their alleged demands were several and not joint. The court, however, overruled the special demurrer and the motion.

Acting under the order of reference the plaintiffs then caused a subpoena to be issued and served upon Polk Laffoon, the secretary of the company, commanding him to produce the company's books and records before the master commissioner on April 2, 1917; and, Laffoon having failed to obey the subpoena, he was ruled to show cause why he should not be punished for contempt. The company and Laffoon responded that the books and records which Laffoon was requested to furnish were the property of the company; that there was no necessity for the production of any of the books or records of the company to establish the several deposits or payments made by the plaintiffs since they had been admitted in the pleadings; that the order directing Laffoon to produce the books and records was made for the sole benefit of persons who were not parties to the action, but for persons on whose behalf the plaintiffs were attempting to sue without the consent of such persons; that none of the amounts claimed by either of the plaintiffs was sufficient to give the circuit court jurisdiction of the subject of the action; that the plaintiff knew all of these facts to be true and dismissed their action or prayer for an injunction over the defendant's objection, and for the sole purpose of preventing an appeal to the Court of Appeals by the company. Up to the time the order of reference was entered, no order had been made permitting the plaintiffs to sue for the benefit of all others similarly interested; but an order to that effect was made after the order of reference had been entered.

The response was judged insufficient; Laffoon was adjudged to be guilty of a civil contempt and an order was issued committing him to the county jail until he should obey the order. The company moved for an exception to this ruling of the court, but the motion was overruled, whereupon the company excepted to the ruling denying the exception, and it and Laffoon prayed an appeal to this court, which was granted. Subsequently the circuit court suspended the order of commitment for a period of thirty days. Later, and on the same day that the appeal was granted the plaintiffs caused a second subpoena to be issued and served upon Laffoon again com-

manding him to produce the books and records before the commissioner on April 18, 1917. Proceeding upon the theory that the circuit court did not have jurisdiction of the case, the company, on April 17, 1917, after due notice to the plaintiff's attorney and the circuit judge, filed its petition in this court for a writ prohibiting Hon. Frank M. Tracy, judge of the Kenton circuit court, from further proceeding upon the ground, that although many thousand dollars are involved in the case the company has no appeal to this court, since none of the judgments could be for an amount sufficient to give this court jurisdiction of the case.

It is proper to state that on April 14th, after the plaintiff's attorney had been notified that the petition for a writ of prohibition would be filed in this court on April 17th, M. H. Petit and seven other persons filed what they called an amended petition (athough neither of the persons therein named was a party to the action), alleging that the company had on March 31, 1917, required Petit to make a deposit of $50.00. But conceding that the petition of Petit was properly filed, his claim of $50.00 did not give the circuit court jurisdiction since the minimum jurisdictional amount in that court must be in excess of $50.00.

The record on the appeal and the petition for a writ of prohibition having both filed in this court the two cases, on the joint motion of the parties, were ordered to be heard together under the practice recognized by this court in I. C. R. R. Co. v. Rice, Judge, 154 Ky. 198, and I. C. R. R. Co. v. Baker, 155 Ky. 512, 49 L. R. A. (N. S.) 496.

We have, therefore, presented for determination two controlling questions: (1) has the appellant company the right under its rule to demand a reasonable deposit to secure the payment of gas to be furnished to its consumers? and (2) did the circuit court have jurisdiction of the action?

The general rule is that a public service company, furnishing gas, electricity, water or telephone services may require that charges shall be paid for a reasonable term in advance, or be secured by a reasonable deposit by the consumer, and may enforce such a requirement by the refusal of service to persons who do not comply therewith. Shepard v. Milwaukee Gas Light Co., 6 Wis. 539, 70 Am. Dec. 479; Williams v. Mutual Gas Co., 52 Mich. 499, 50 Am. Rep. 266; Vanderberg v. Kansas City Gas Co., 126 Mo. App. 600; Tacoma Hotel Co. v. Tacoma Light &

Water Co., 3 Wash. 316, 28 Am. St. Rep. 35, 14 L. R. A. 669; Harbison v. Knoxville Water Co. (Tenn.), 53 S. W. 993; Bienenfeld v. Consolidated Gas Co., 119 App. Div. 855, 103 N. Y. S. 1116; Cedar Rapids Gas Light Co. v. Cedar Rapids, 144 Iowa 426, 138 Am. St. Rep. 299, 48 L. R. A. (N. S.) 1025; Phelan v. Boone Gas Co., 147 Iowa 626, 31 L. R. A. (N. S.) 319; Woodley v. Carolina Tel. & Tel. Co., 163 N. C. 284, Ann. Cas. 1914D, 116, with note collecting the cases; Hieronymous Bros. v. Bienville Water Supply Co., 131 Ala. 447; Buffalo County Tel. Co. v. Turner, 82 Neb. 841, 118 S. W. 1064; 19 L. R. A. (N. S.) 693; Robbins v. Bangor R. & E. Co., 100 Me. 496, 1 L. R. A. (N. S.) 963; Hatch v. Consumers' Co., 17 Idaho 204; State v. Independent Tel. Co., 59 Wash. 156, 31 L. R. A. (N. S.) 329; State v. Butte Water Co., 18 Mont. 199; Turner v. Revere Water Co., 171 Mass. 336; Pawhuska Oil & Gas Co. v. City of Pawhuska, 47 Okla. 342, 148 Pac. 118; Southwestern T. & T. Co. v. Danaher, 238 U. S. 485; Sheffield Waterworks Co. v. Carter, 8 Q. B. D. 623, 51 L. R. M. C. 97, 30 W. R. 889; Thornton on Oil & Gas, sec. 541; Wyman on Public Service Corp., 430.

The general rule is stated in 12 Ruling Case Law, page 893, as follows:

"That the company may enforce a regulation exacting payment in advance in reasonable amounts, or requiring the deposit of security, is fully settled by the authorities. The company is bound to furnish gas on application, and it is but just that it be not compelled to supply unknown or irresponsible persons therewith, without assurance in some form that it will receive compensation.

"While a rule may not be based on the theory that the people as a whole are dishonest, the company has the right to adopt a rule which, while giving the honest citizen what he pays for, will prevent the dishonest from getting that which he will never pay for."

This court recognized this rule in Owensboro Light Co. v. Hildebrandt, 19 Ky. L. R. 983, 42 S. W. 351, saying:

"They are *quasi* public corporations and practically have a monopoly of the business of manufacture and furnishing gas within the corporate limits of the city; it is, therefore, their duty to furnish the city's inhabitants with gas and to do so upon terms and conditions common to all and without discrimination. They can not fix a variety of prices or impose different terms and conditions, according to their caprice or whim.

"They may, however, fix reasonable rules and regulations, applicable to all the consumers alike. In these cases the companies undertook to compel the appellee to deposit the sum of $20.00 as security for his future consumption of gas and electricity, and upon refusal to do so withdrew their pipes and wires from his building.

"This suit was to compel them to furnish him light, and the court on final hearing granting the relief sought.

"It is conceded by appellee that appellant may prescribe reasonable rules and regulations and impose reasonable conditions upon the consumer and require proper security for the payment of their bills, and may even require deposits in advance, but his contention is that the companies have adopted no such rule or regulations as they attempted to enforce against him, and such appears to be the fact."

For other instances of reasonable regulations by public service companies, see Cox v. City of Cynthiana, 123 Ky. 363; McDaniel v. Faubush Telephone Co., 32 Ky. L. R. 572, 106 S. W. 825; Williams v. Maysville Telephone Co., 26 Ky. L. R. 945, 82 S. W. 995; City of Covington v. Ratterman, 128 Ky. 336, 17 L. R. A. (N. S.) 923; Louisville Tobacco Warehouse Co. v. Louisville Water Co., 162 Ky. 478. The only case that seems to give forth a discordant note is Columbus v. American Gas Co., 96 Kan. 367, L. R. A. 1915F 1180, P. U. R. 1915F, 889, where the Kansas Supreme Court held that the requirement of a deposit by a gas company, was an increase in rates, because a fund would thereby be created, the interest on which would be of value, thus permitting the company really to charge the consumer more than the maximum contract rate. And, since appellant is charging the maximum contract price of thirty cents per thousand cubic feet, as in the Kansas case, it is argued that when the company requires the consumer to make a deposit, it charges him more than thirty cents per thousand feet. None of the cases announcing the general rule that a deposit may be required, recognize the distinction made in the Kansas case, that the interest upon the deposit is to be treated as a part of the price of gas to the consumer.

The decisions of this court denying the right of the company to make an additional charge in the form of meter rent at a minimum monthly charge, were based upon the fact that, in those cases, the consumer was in that way, charged more than the contract price for the

amount of gas consumed.  Louisville Gas Co. v. Dulaney,
100 Ky. 405; Capital Gas & Electric Co. v. Gaines, 20
Ky. L. R. 1464, 49 S. W. 462.

But, the excess in the case of a deposit cannot be more
than the legal interest on the deposit; and, the rule per-
mitting the company to require the deposit does not per-
mit the company to hold the consumer's money without
paying interest thereon.  The requirement that the com-
pany should pay interest upon the deposits is but the
complement of the rule that it may require a deposit.

One part of the rule is for the protection of the com-
pany, the other for the protection of the consumer.
Manifestly, it would not be right to permit the company
to hold and use the consumer's money or property, *gratis;*
otherwise, the company's interest would be to require a
greater deposit than was really necessary to give it pro-
tection.

Under the interpretation and extension of the rule
here given it is not at all inconsistent with the ruling in
the Kansas case, or that in the Dulaney case and the
Gaines case decided by this court; on the contrary it is in
entire harmony with those cases as well as with the gen-
eral rule above stated.

As there is no contention in the briefs that the depos-
its are unreasonable in amount, nothing need be said upon
that subject.

We conclude, therefore, that appellant's rule concern-
ing deposits is a reasonable rule and one that it had the
right to enforce.

2.   Since so much of the petition as asked an injunc-
tion was withdrawn by the plaintiffs, the only remaining
relief asked was a judgment for money.  The jurisdiction
of the circuit court in civil cases for the recovery of
money is limited to cases where the amount in controversy
exceeds fifty dollars.  Kentucky Statutes, sections 966,
1086.  Consequently, as the claim of neither plaintiff ex-
ceeds fifty dollars the jurisdiction of the circuit court de-
pended upon the fact whether one or more of the plain-
tiffs could sue not only for themselves, but also on behalf
of all others having similar claims against the appellant,
and in that way join claims sufficient to aggregate more
than fifty dollars in amount.

Section 25 of the Civil Code of Practice reads as fol-
lows:

"If the question involve a common or general interest
of many persons, or if the parties be numerous and it is
impracticable to bring all of them before the court within

a reasonable time, one or more may sue or defend for the benefit of all.''

From this it appears that the right of a few to sue or defend for the benefit of all is limited to two kinds of cases, (1) where the question to be tried involves a common or general interest of many persons, and (2) where the parties are numerous and it is impracticable to bring all of them before the court within a reasonable time. In this case the right is claimed under the first clause which gives the right only when the question to be tried involves a common or general interest, not only of those who are named as plaintiffs, but also of all those for whom the plaintiffs sue. What, then, is the precise character of this common or general interest?

In Commonwealth v. Scott, 112 Ky. 252, 55 L. R. A. 597, it was held that where a tax had been illegally collected one taxpayer might sue to recover the tax for the benefit of all the taxpayers who had contributed to it. This was permitted upon the theory that the tax constituted a trust fund, and the interests of all were identical in character though not in amounts. Whaley v. Commonwealth, 110 Ky. 154; Sparks v. Robinson, 115 Ky. 453, and McCann v. City of Louisville, 23 Ky. L. R. 558, 63 S. W. 446, are to the same effect.

And, in Gorley v. City of Louisville, 23 Ky. L. R. 1782, 65 S. W. 844, it was further held that one of several policemen who had been illegally discharged, could sue for all of them. But some of these cases were rested upon the further ground that as they involved the revenues of the city, public policy required that they be settled in as speedy a manner as possible and without a waste of the public funds which would be incurred if each plaintiff were required to sue separately. In Hyatt v. Anderson's Trustee, 25 Ky. L. R. 133, Petett brought an action for himself and all other creditors of a corporation to enforce the double liability of Hyatt, a stockholder, for the purpose of paying the claims of all creditors of the corporation. In denying Petett's right to sue for the others the court said:

''We do not see that any question of general or common interest was presented, or that the creditors were so numerous that they could not have been brought before the court within a reasonable time. The liability of the stockholder to each creditor was several. No creditor had any interest in the liability of the stockholder to any other creditor. His only interest in the others was to

obtain a personal judgment in favor of himself for his own debt.''

Likewise, in the case before us, each plaintiff is asking a personal judgment for his own deposit; he claims no interest in the deposits of the other plaintiffs.

Again in Nairin v. Kentucky Heating Co., 27 Ky. L. R. 554, 86 S. W. 676, Nairin sued for himself and all other gas consumers to enjoin the company from turning off their supply of gas; but in denying him that right the court said:

''The parties whom the plaintiff attempts to represent, and in favor of all whom the injunction was granted, have 'no common or general interest.' They have no joint right. They have only a question of law of common or general interest. But it is not sufficient that the matters presented by the pleadings raise a question of law of common or general interest; but if it were, defenses of varying character might be presented. Oswald v. Morris, 92 Ky. 52; Newman on Pleading, page 465.''

In Alexander, Revenue Agent v. Aud, 28 Ky. L. R. 70, 88 S. W. 1103, it was held that an injunction suit to prevent the State Auditor and his revenue agent from selling land upon the ground that the sheriff's reports of sales were insufficient, in their descriptions, to identify the parcels sold by him, and upon the further ground that some of the taxes had been paid, did not present a question that was of common or general interest to all the 1170 other citizens whose land had been sold for taxes, and that the nineteen plaintiffs could not sue for them under section 25 of the Civil Code.

In Thomas v. Ky. Trust Security Co., 156 Ky. 260, it was held a suit to recover usury did not present such a common or general interest that one who had paid usury to the defendant could sue for others who had similar claims under the same statute against usury.

From these authorities directly in point it follows that the plaintiffs cannot sue for other depositors and that the circuit court had no jurisdiction of any one of the cases presented by the petition and amended petition.

The circuit court having no jurisdiction of the case out of which the proceedings for contempt against Laffoon grew, the judgment punishing him for contempt was void. Wages v. Commonwealth, 13 Ky. L. R. 925. And, since the circuit court was proceeding without jurisdiction of the subject matter, the writ of prohibition will be granted.

This being a case of civil contempt, an appeal lies, notwithstanding section 950 of the Kentucky Statutes. Adams v. Gardner, 176 Ky. 252, and the cases there cited.

Judgment reversed in the first above styled case and the writ of prohibition granted in the second case.